OPINION OF THE COURT
Joseph J. Sedita, J.
Plaintiff in this matrimonial action seeks a protective order against the discovery sojight herein and dismissal of the first and second counterclaims asserted by the defendant. Defendant seeks summary judgment as to her first counterclaim.
The central protagonists in the legal controversy herein are an agreement which was signed by the parties on July 20, 1979 and the new equitable distribution law. The new law is set forth in section 236 of the Domestic Relations Law and became effective on July 19,1980. This action was commenced by the husband on July 28, 1980 seeking a divorce based upon their having lived apart pursuant to this agreement for one year.
In this classic battle between old and new law, the husband fights on the side of the old law and the status quo *421 asserting that the agreement they signed in 1979 represented a full settlement of their property rights. The wife has in turn unfurled the new banner of equity reflected in the new law. She asserts that the agreement they signed was primarily a support agreement and not intended to be a full settlement of property rights. In addition to challenging the efficacy of the agreement as a comprehensive property settlement, she has challenged the adequacy of the support and maintenance provisions of said agreement. She has also alleged that the plaintiff husband is several weeks in arrears in support payments to her and therefore has not sufficiently complied with the agreement. Ironically the defendant wife seeks a judgment of divorce in her favor apparently based upon the challenged agreement, in that no other grounds for divorce have been alleged by her.
A number of issues are raised by this motion including: (1) whether pre- or post-equitable distribution law should apply to this agreement; (2) whether the agreement should be construed as being either a comprehensive or partial settlement of property rights between the parties; (3) whether the basis for this “conversion” divorce is voidable by the defendant wife if plaintiff husband is proved to be in arrears in support payments; (4) whether a basis has been shown for challenging the sufficiency of the support and maintenance provisions of the agreement; (5) whether the discovery sought herein is appropriate in this case.
In determining what law to apply in construing this agreement, the court has but to look to the express language of the new law which states in part: “Nothing in this subdivision shall be deemed to affect the validity of any agreement made prior to the effective date of this subdivision.” (Domestic Relations Law, § 236, part B, subd 3.)
This language makes the intent of the Legislature clear on this issue. Retroactive application of the new law to agreements valid under pre-equitable distribution is clearly proscribed. Accordingly, this court will look to applicable law at the inception of, and during the effectuation of this agreement.
We note at this point that the agreement has not been challenged as having been induced by any fraud, misrepre *422 sentation or duress. No information has been submitted to the court relative to division of marital assets at the time of the signing of this agreement which would lead the court to conclude that the division was unconscionable or that an area of marital assets was not considered when the agreement was made by the parties. In paragraph 16 of the agreement the parties state: “The parties acknowledge that they are entering into this agreement freely and voluntarily; that they have ascertained and weighed all of the facts and circumstances likely to influence their judgment herein; that they have sought and obtained legal advice independently of each other; that they have been appraised of their respective legal rights; that all the provisions thereof as well as all questions pertinent hereto have been fully and satisfactorily explained to them; that they have given due consideration to such provisions and questions; and that they clearly understand and assent to all the provisions thereof.”
The defendant seeks to assert that this agreement only partially settled property rights between the parties and that the court is free to equitably distribute property not specifically mentioned in the agreement. Of particular interest to the defendant is a restaurant business owned by the plaintiff husband, a snowmobile, and a 16-foot fiberglass boat with an inboard motor.
The court is in agreement with the defendant that if indeed this agreement was found to be only a partial settlement of property rights, then property excluded from the agreement would be subject to the new law in that the action was commenced after the effective date of said law.
A careful examination of this agreement, however, reveals in language that could hardly be more clear, the intention of the signatories to fully settle the totality of their property rights in this agreement. More specifically the court takes note of the following clauses which elucidate the express intent of the parties:
“Whereas, the parties desire to settle and forever adjust their property rights and other rights as hereinafter more fully set forth.” (Emphasis supplied.)
“9. The parties hereto have incorporated in this agreement, their, entire understanding.” (Emphasis supplied.)
*423 “11. Except as otherwise provided herein the parties mutually release each other from any and all claims and demands which either party may heretofore have had against the other.” (Emphasis supplied.)
“17. This agreement constitutes the entire understanding of the parties.” (Emphasis supplied.)
Our courts have held that words utilized in an agreement should be given their natural, ordinary, and familiar meaning, especially where the agreement was prepared by skilled counsel. (See 2 Foster and Freed, Law and the Family, §28:23.) Where the language of a written instrument is clear and unambiguous, the parol evidence rule precludes use of extrinsic evidence to interpret the agreement. (See Fisch, New York Evidence, §§41, 56-58; Benderson Dev. Co. v Schwab Bros. Trucking, 64 AD2d 447; Martin v Glenzan Assoc., 75 AD2d 660.)
Public policy favors agreements between the parties. (See Galusha v Galusha, 116 NY 635, Matter of Sandra S. v Matthew G., 99 Misc 2d 309.) Agreements which are entered into freely and with “eyes open” permit the parties to effectuate their own wills and construct their own futures as opposed to having their affairs settled by the will of a Magistrate. Agreements save the parties and the government the cost of a lengthy adjudication of the parties’ rights, and can give the parties prospective certainty about future obligations and rights which will enable them to plan for the future in an organized and stable manner. Interpretations of agreements which vitiate clearly expressed intentions of the parties can only lead to an undermining of this public policy and discourage citizens from resolving their differences between themselves rather than in the courts. (See our decision in Boss v Boss, 107 Misc 2d 984.)
The court has been urged to follow the example of the New Jersey Supreme Court in the case of Smith v Smith (72 NJ 350). New Jersey enacted an equitable distribution statute prior to New York. This case can be distinguished from our controversy. The New Jersey agreement was primarily an agreement for support and did not contain as strong or as clear language expressly referring to settlement of property rights and the comprehensivity of the *424 agreement as does our New York agreement. Even the New Jersey court notes (supra, p 358) that: “where equitable distribution is sought * * * an earlier separation agreement will be a bar to such relief *** to the extent that, it can qualify as a property settlement *** fair and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed.”
And finally, we note that while we respect the decisions rendered in the courts of a sister State, our courts are, of course, not bound by their case law.
It therefore is the opinion of this court that the clear and express intention of the parties to this agreement was to effectuate a comprehensive settlement of their property rights. Any property not specifically mentioned in the agreement would therefore remain the property of whichever individual has legal title to said property.
The next issue to be dealt with is whether the defendant wife may challenge her husband’s basis for a conversion divorce by alleging that he was several weeks behind in support payments. The plaintiff husband has asserted that he is in compliance with the support requirements of the agreement.
Subdivision (5) of section 170 of the Domestic Relations Law requires only that “he or she has substantially performed all the terms of and conditions of such decree or judgment” (emphasis supplied) in order to establish a basis for a divorce on this ground. The defendant wife in her answer to the husband’s complaint does not allege lack of “substantial performance” and only alleges that he “has not completely complied with the agreement”.
While a major arrearage might form a basis for alleging substantial noncompliance (see for example Roth v Roth, 74 Misc 2d 135), an arrearage of a few weeks can hardly operate to vitiate a complex agreement which has been complied with by the parties in all other respects. (See Rubin v Rubin, 35 AD2d 460; Pierce v Pierce, 50 AD2d 867; Vitale v Vitale, 37 AD2d 963; Van Vort v Van Vort, 62 Misc 2d 981; 16 NY Jur, § 878.) The defendant’s affirmative defense of noncompliance must fail, however; the plaintiff has not controverted her assertion of a conversion basis for *425 divorce in her first counterclaim which therefore must be deemed to be admitted by the plaintiff.
The motion herein seeks dismissal of the first and second counterclaim only, however, the court must examine the third counterclaim also to determine if a protective order might be appropriate. In this third counterclaim, the defendant asserts that support and maintenance provisions in the agreement are insufficient and inadequate. She seeks an increase in both. The plaintiff in turn has sought a reduction in support and maintenance due to his claim of drastic change in his financial circumstances. The plaintiff, like the defendant, has placed himself in the awkward position of seeking to uphold the agreement while at the same time asking for a modification of its terms in his favor. The agreement provides for $50 per week to the wife and $25 per week as support to the child of the marriage for a total of approximately $300 per month. Additionally, the husband has agreed to maintain medical and dental coverage for the child as well as a $20,000 life insurance policy on his life with the child being the beneficiary following the divorce of the parties.
These provisions do not appear to be either overly generous or overly frugal. Neither party has asserted or submitted evidence that they are destitute or about to become wards of the State. In light of the Court of Appeals decisions in McMaines v McMaines (15 NY2d 283) and Matter of Boden v Boden (42 NY2d 210), this court can see very little potential for success by either party in obtaining a modification of these provisions which were agreed to by the parties in 1979. (See, also, La Scala v La Scala, 73 AD2d 1068; Jaslow v Jaslow, 75 AD2d 876; Jarvis v Jarvis, 99 Misc 2d 79; Beris v Beris, 70 AD2d 769.)
In view of the minimal likelihood of success by either party it would be unduly burdensome to permit the extensive discovery sought herein especially where the only possibly viable basis for seeking discovery is modification of support and maintenance provisions of a valid agreement between the parties. (See Gleeson v Gleeson, 69 AD2d 964; Shiffman v Shiffman, 57 AD2d 519.) Said discovery should be limited to any postagreement income tax returns which will reflect the present financial situation of the *426 plaintiff herein as well as the condition of his business (by reference to Schedule “C” in the Federal return). Since the plaintiff husband himself seeks a modification downward, he should be precluded from introducing any additional material or records at a subsequent hearing or trial which he did not produce voluntarily at the forthcoming examination before trial.
Accordingly, plaintiff’s motion to dismiss defendant’s second counterclaim is granted. The defendant wife’s affirmative defense of noncompliance has been deemed insufficient and her counterclaim for a conversion basis uncontroverted. There remains no reason for this court not to grant to both parties, by way of summary judgment, a conversion divorce. (We note that CPLR 3212 [subd (b)] permits the granting of summary judgment to a party who did not originally move for summary judgment as long as the other party had made such a motion.) All that remains as a possible dispute between the parties are the issues of the merger of the agreement in the final decree, modification of support provisions, and the allegation of a minor arrearage in payments which might presently exist.
The request for a protective order is granted except as to those items set forth above. The defendant shall be granted leave to apply for an order of preclusion as to any materials or records which plaintiff refuses to voluntarily reveal to the defendant and which he might seek to submit on his own behalf at any subsequent hearing.