## Fox v. Fox

*Michael S. Ramage,* for plaintiff.
*Emanuel A. Bertin,* for defendant.

VOGEL, *J.,* February 28, 1984—This case of first impression arose out of a complaint in divorce filed by plaintiff-wife, Linda Fox, on July 18, 1983. In count I of the complaint, plaintiff requested this court to enter a decree in divorce only in conjunction with a decree of equitable distribution. In counts II through IV, plaintiff requested this court to enter a decree of equitable distribution, an award of permanent alimony and an award for alimony pendente lite, counsel fees, costs and expenses, respectively.

Defendant-husband, Remy Fox, filed an answer and counterclaim to count I on July 20, 1983, alleging the existence of a valid antenuptial agreement (hereinafter "agreement"), executed by the parties on November 15, 1979, that, in his opinion, should be incorporated into any divorce decree. Defendant also filed preliminary objections on July 20,

1983 to counts II through IV, alleging that the agreement settled the issues raised in those counts, and that the court, therefore, lacked jurisdiction to hear counts II through IV.

Plaintiff filed her answer and new matter to defendant's preliminary objections on August 15, 1983, alleging that since the rights to alimony and equitable distribution were non-existent at the time the agreement was executed, these new rights are still available to her, and that the agreement is invalid and void.[1]

Pursuant to a stipulation entered before the undersigned on September 29, 1983, plaintiff filed a petition to set aside antenuptial agreement on October 14, 1983. A hearing concerning defendant's preliminary objections of July 20, 1983 and plaintiff's petition to set aside antenuptial agreement of October 14, 1983 was held before the undersigned on December 6, 1983. At this hearing, the parties entered a stipulation, set forth in full in the margin.[2]

---

1. Plaintiff also averred in her August 15, 1983 pleading that defendant failed to make a full and adequate disclosure of his assets and income, and failed to make a reasonable provision for his wife in the event of a divorce. This claim has been rendered moot by the stipulation of the parties on December 6, 1983.

2. The parties stipulated as follows:

(1) The parties agrees that the petition to set aside antenuptial agreement of October 14, 1983 be dismissed with prejudice.

(2) Plaintiff agreed that:

(1) the agreement was executed after a full, complete and adequate disclosure;

(2) there was a reasonable provision made for the purpose of determining the validity of the agreement;

(3) Plaintiff carefully read the agreement and had the advice of her counsel, William Henifen, Esq., concerning the meaning and execution of the agreement;

The stipulation determined many of the issues raised in the pleadings in regards to the contractual validity of the agreement. As a result of this stipulation, the court is now in the proper posture to decide

(4) there was no fraud, accident, mistake, unconscionability or undue influence practiced upon her by anyone; and

(5) the agreement is valid and binding upon her heirs, legal representatives and assigns.

(3) Plaintiff agreed that she has waived and released her rights under paragraph 4 of the Agreement to alimony pendente lite, counsel fees, costs and expenses, and support and maintenance.

(4) Plaintiff agreed that defendant's preliminary objections to count IV of the complaint, praying for alimony pendente lite, counsel fees, costs and expenses, be sustained, and that count IV be dismissed with prejudice, barring plaintiff from hereafter filing any support or maintenance action against defendant in this or any other jurisdiction.

(5) Plaintiff agreed to withdraw with prejudice her complaint for alimony pendente lite filed with the domestic relations office, and to withdraw with prejudice her petition for counsel fees, costs and expenses.

(6) Plaintiff agreed to withdraw with prejudice paragraphs 5, 6, 7, 9 and 10 of her new matter embodied in her answer to defendant's preliminary objections of August 15, 1983, with said paragraphs to be dismissed with prejudice, thereby leaving paragraph 8 open for determination by the court.

(7) Plaintiff contends, however, that she is not barred under the agreement from obtaining alimony, and she contends that she is not barred from obtaining equitable distribution of property acquired after the marriage and prior to separation, namely:

(1) a Maryland cabin and land pertaining thereto, which was purchased after the marriage and is jointly owned;

(2) furnishings and miscellaneous personal property in said cabin which is joint property;

(3) a Baltic 42 sailboat, which is titled in defendant's name alone;

(4) a Wellcraft speedboat, which is titled in defendant's name alone;

the sole remaining issue between the parties, namely whether an antenuptial agreement executed prior to the adoption of the Commonwealth's new Divorce Code in 1980 will act to bar a claim for alimony and equitable distribution pursuant to the Divorce Code of 1980.[3]

The facts adduced at the December 6, 1983 hearing are relatively straightforward. Plaintiff, Linda Fox, is 39 years old and has two children from a prior marriage. Defendant, Remy Fox, is also 39 years old. Plaintiff and defendant were married on November 16, 1979. The parties separated on January 5, 1983, and no children have been born of this marriage.

The parties dated for nine months prior to their marriage, and decided to marry approximately one month before the date of the marriage. On November 10, 1979, plaintiff and defendant met with defendant's attorney, Jay Ochroch Esq., for the purpose of drafting an antenuptial agreement between the parties. During this meeting, which lasted approximately one and one-half hours, plaintiff was urged by defendant and by Mr. Ochroch to have the

(5) miscellaneous personal property in the Gladwyne, Pa., home, said home being titled in defendant's name alone.

(8) Defendant contends that his preliminary objections, which go to the issue of alimony and equitable distribution, should be sustained, and that the property acquired after marriage, in his name alone, is his property; that the property acquired after marriage, in plaintiff's name alone, is her property, and that any joint property that is titled jointly and acquired after the marriage, would be divided fifty-fifty upon the entry of the divorce decree so that the Divorce Code is not applicable to the five items of property mentioned by plaintiff.

3. Plaintiff also filed on July 18, 1983 a petition to require defendant to return possession of premises 1532 Waverly Road, Gladwyne, Pa. to plaintiff. The petition was denied by order of this court on July 20, 1983.

situation involving the antenuptial agreement reviewed by her own, independent counsel.

Mr. Ochroch then prepared an antenuptial agreement for the parties and the final draft and cover letter were picked up from Mr. Ochroch's office on November 13, 1979 by defendant. On or about November 14, 1979, plaintiff discussed the antenuptial agreement with her attorney, William Henifen Esq., who maintains his practice in Camden, New Jersey. On November 15, 1979, the day before the parties were married, plaintiff and defendant fully executed and notarized the antenuptial agreement.

The issue presented by this case is whether an antenuptial agreement executed prior to the adoption of the Commonwealth's new Divorce Code in 1980 is affected by the enactment of the Divorce Code. The antenuptial agreement executed by the parties on November 15, 1979 was intended "to determine and clarify (the parties') rights with the other party . . .", and addressed such issues as alimony or support, alimony pendente lite, counsel fees and property rights in the event of a divorce. The agreement, in parts pertinent to the present discussion, provides:

"4. The parties hereto do mutually waive, release and quitclaim her or his rights as follows:

(a) To alimony pendente lite, counsel fees and costs; and

(b) To support, alimony or maintenance as provided by statute or common law of any state whose law may be applicable thereto.

5. Both parties agree that the other may dispose of all or any of their assets, real, personal or mixed, by gift, sale or conveyance, and each of them shall, if required, execute any and all instruments required to complete such disposition. All rights of the parties

by virtue of dower, curtesy or by common or statute law in the property of the other, be it real, personal or mixed, is hereby waived, remised and released."

The present dispute requires this court to interpret this agreement in light of the new rights granted by the legislature in the 1980 reform of Pennsylvania's divorce laws. The Divorce Code of 1980[4] "represents a drastic, and dramatic repudiation by the legislature of the philosophy of the Divorce Law of 1929." Gordon v. Gordon, 293 Pa. Super. 491, 439 A.2d 683 (1981), aff'd, 498 Pa. 570, 449 A.2d 1379 (1982) The Superior Court in Gordon wrote, at 293 Pa. Superior Ct. at 508-9.

"In section 102 of the Divorce Code the legislature declared as the policy of the Commonwealth a philosophy and set of objectives diametrically opposed to the punitive philosophy of the Divorce Law of 1929. Thus the legislature expressed its intent that the new code should 'deal [] with the realities of matrimonial experience.' . . . It stated that 'reconciliation and settlement' should be '[e]ncourage[d] and effect[d].' . . .

It explicitly repudiated the philosophy that the basis of the law should be 'the vindication of private rights or the punishment of matrimonial wrongs,' stating that instead, 'primary consideration' was to be given to 'the welfare of the family.' . . . And finally, it emphasized its intent to '[e]ffectuate economic justice between parties who are divorced or separated.' " (Citations omitted.)

As a result of these new policy objectives, the legislature broadened the use of alimony as a means to "effectuate economic justice" by delineating several equitable factors for courts to consider in determin-

4. Act of April 2, 1980, P.L. 63, No. 26 § 101, et seq. effective in 90 days, 23 P.S. § 101, et seq.

ing whether alimony should be awarded in particular circumstances.[5] Likewise, the legislature decided that courts shall "equitably divide" the marital property," based on all "relevant factors."[6] The result is a divorce code based more on equitable considerations than on strict legal truisms.

Plaintiff contends that the release clause in paragraph 4 of the agreement, purporting to release rights to alimony, is ineffective in this instance, since it does not clearly indicate a waiver of future, non-existent rights to alimony granted by newly enacted laws. Further, plaintiff contends that, since the release clause in paragraphs 5 of the agreement does not specifically mention equitable distribution and since the right to equitable distribution was non-existent at the time the agreement was executed, the agreement should not bar plaintiff's claims for equitable distribution.

Defendant contends that the agreement, as a valid and binding contract, limits the power of this court to hear and determine the ancillary issues raised in counts II through IV, since the agreement purports to waive any and all rights, whether by statute or common law, to such ancillary claims. Defendant also asserts that Section 103 of the Divorce Code of 1980, which provides, in pertinent part, that "this act shall not affect any marital agreement executed prior to the effective date of this act or any amendment or modification thereto," acts to bar plaintiff, by the clear language and intent of the statute, from raising the ancillary issues.[7]

5. 23 P.S. §501.

6. 23 P.S. §401.

7. Black's Law Dictionary, 5th Edition (1979), defines "marital agreements" as contracts between parties who are either on the threshold of marriage or on the verge of separation, and are contracts primarily concerned with the division and ownership of marital property.

A review of the case law reveals no authoritative decision that has squarely resolved the issue presented herein. As a result, we will look to the language of the statute, the intent of the legislature and general public policy concerns to guide us in resolving this matter.

The provision in Section 103 referred to above was introduced as an amendment to the original bill on September 25, 1979. Representative Scirica* of Montgomery County, now a judge on this court and a prime sponsor of the new Divorce Code, described this amendment as follows, at House Journal, 1979, Vol. III at 1825-26:

"This (part of the) Amendment . . . is consistent with another provision of the bill that says that once a decree in divorce has been entered prior to the effective date, it cannot be reopened, and the intent of this part of the amendment is to treat those matters that have been settled, either in court or out of court, as settled, and not allow parties to open them up."

Given the clear language of Section 103, and the supporting legislative intent evidenced by the remarks of Representative Scirica, we hold that, to the extent that the provisions of an antenupital agreement executed prior to the Divorce Code's enactment purport to fully settle and determine the rights of the parties upon divorce, the antenuptial agreement shall be deemed valid and binding on the parties despite the provisions of the Divorce Code of 1980.[8]

---

8. This holding is consistent with the holdings of cases decided by courts in other states when faced with similar issues. See, for example, Smith v. Smith, 72 N.J. 350, 371 A2d 1 (1977) and Carner v. Carner, 85 A.D.2d 589, 444 NYS 2d 715 (1981).

* Judge Scirica is now a federal judge in The United States District Court for the Eastern District of Pennsylvania.

We are confident that public policy concerns support this holding. A fortuitous act of the legislature should not be able to breathe new life into an already existing and valid agreement.[9] In Boss v. Boss, 107 Misc.2d 984, 436 NYS 2d 167 (1981), Justice Sedita of the New York Supreme Court, Erie County, when confronted with an issue similar to the issue presented herein, wrote, at 107 Misc. 2d at 986-87, 436 NYS 2d at 168-69,

". . . Part of the *quid pro quo* which one gives up when one enters into a comprehensive agreement such as this is the possibility that the law may change in one's favor. A stable and sure arrangement in the present is preferred to the mere 'possibility' of a better result in the future. This 'trade off' is implicit in the bargain made by the parties. To permit the possibility of an ex post facto modification of a comprehensive agreement, such as this, can only lead to the discouragement of 'voluntary' agreements between parties . . . and a flood of litigation. . . . The parties have made their bargain and it is the duty of the courts to hold them to it." (Citations omitted.)

In Pennsylvania, settlement agreements generally are not void as against public policy where the

9. While the court expresses no view on the power of the legislature to enact legislation that would diminish the rights of the parties under an existing marital agreement, we note the general constitutional rule that an enactment of the state legislature which attempts to take from a party a right to which he is entitled by the terms of a contract between individuals is held to impair the obligation of that contract, and is generally prohibited by the federal and state constitutions. 7A P.L.C. Constitutional Law §201-202, pg. 65-71. Thus, we believe our holding that the plaintiff should not benefit from a fortuitous act of the legislature is consistent with the general rule for the "flip" side that the rights of a party to a contract should not be impaired by a detrimental act of the legislature.

agreement is not conducive to divorce. Kay v. Kay, 460 Pa. 680 334 A.2d 585 (1975). In Gedraitis v. Gedraitis, 109 Misc. 2d 420, 439 NYS 2d 978 (1981), Justice Sedita of the New York Supreme Court, Erie County, wrote, at 109 Misc. 2d at 423, 439 NYS 2d at 981:

"Public policy favors agreements between the parties. . . . Agreements which are entered into freely and with 'eyes open' permit the parties to effectuate their own wills and construct their own futures as opposed to having their affairs settled by the will of a magistrate. Agreements save the parties and the government the cost of a lengthy adjudication of the parties' rights, and can give the parties prospective certainty about future obligations and rights which will enable them to plan for the future in an organized and stable manner." (Citations omitted.)

We determine that our holding herein is consistent with the policy statements declared by the legislature in Section 102 of the Divorce Code, since the holding will allow those individuals who may have executed an antenuptial agreement prior to the enactment of the Divorce Code to continue their marriages with the secure belief that their agreements, entered into with the intent to fully settle and determine economic rights in the event of a divorce in a manner agreeable to both parties, have not been affected by the Divorce Code's new provisions for settling economic issues upon divorce.

Thus, given our holding that an antenupital agreement executed prior to the enactment of the Divorce Code is valid and binding to the extent that it fully settles and determines the rights of the parties upon divorce, the real question in the present matter becomes one of determining the scope of the release clauses in the agreement. This task is governed primarily by principles of contract law. 18

P.L.E. Husband and Wife §21, at 47; Kleintop v. Kleintop, 291 Pa. Super. 491, 436 A.2d 223 (1981). Questions in regard to contract interpretation are questions of law, and lie peculiarly within the domain of the court to decide. Kardibin v. Associated Hardware, 284 Pa. Super. 586, 426 A.2d 646 (1981). When interpreting a contract, the court must determine the intention of the parties. Robert F. Felte, Inc. v. White, 451 Pa. 137, 302 A.2d 347 (1973). The intent of the parties to a written contract is to be regarded as being embodied in the writing itself, and when the words are clear and unambiguous, the intent is to be discovered only from the express language of the agreement. Steuart v. McChesney, 498 Pa. 45, 444 A.2d 659 (1982). When the terms of a written contract, read in its entirety, are clear, a court will not rewrite it or give it a construction in conflict with the accepted and plain meaning of the language used. Litwack v. Litwack, 289 Pa. Super. 405, 433 A.2d 514 (1981).

The alimony release clause found in paragraph 4 of the agreement clearly provides that the parties "waive" their rights to "support, alimony or maintenance as provided by statute or common law of any state, . . ." This provision clearly went beyond a waiver of the limited rights to alimony available in Pennsylvania under the Divorce Law of 1929, since it explicitly refers to the alimony or support laws of *any* state. Thus, it is our interpretation that the parties, by agreeing to the provisions in paragraph 4, intended to fully settle and determine the issue of alimony upon divorce, and agreed that neither party would have a right to receive alimony even if the law so provided.

The property release clause found in paragraph 5 of the agreement provides that "all rights of the parties . . . by common or statute law in the property of

the other, be it real, personal or mixed, is hereby waived, remised and released." The paragraph is written in broad terms, and also evidences the parties' agreement that, during the marriage, either "may dispose of all or any of their assets" without interference from the other party. The release clause refers to the waiver, remise and release of "all rights" "by common or statute law." Given this broad language, we find that the parties intended to fully settle and determine the issues of property distribution in the antenuptial agreement.

Plaintiff in her brief refers to two cases in which the existence of a marital agreement executed prior to the enactment of the Divorce Code did not preclude a party from asserting a right granted by the divorce laws then in effect. However, a careful reading of the provisions of the agreements involved in those two cases reveals that the agreements were not found to fully settle and determine the rights of the parties as we have found in the present matter. In Belsky v. Belsky, 196 Pa. Super. 374, 175 A.2d 348 (1961), the antenuptial agreement of the parties provided for the release of "any and all rights, claims or demands for maintenance and support" and that "the income from the (wife's) separate property is sufficient to maintain and support her." The Superior Court found that this language "does not in any event operate to bar an award for alimoney pendente lite," since "the terms 'maintenance and support' does not have the same connotation as the term 'alimony pendente lite.' " 196 Pa. Super. at 376, 379. Thus, the decision in Belsky v. Belsky, supra, is clearly distinguishable from the present matter, since we have found the release clauses in the agreement herein to be considerably broader than the one in Belsky, and to fully settle and determine the issues of alimony and property distribution.

Likewise, in Kutzer v. Kutzer, 110 Montg. Co. L.R. 226 (1982), Judge Tredinnick found that the provisions of a separation agreement executed in 1979 did not preclude the claims of the wife to alimony or equitable distribution. In Kutzer, the release clause provided that each party releases the other of ". . . all . . . claims . . . which either . . . ever had or now has against the other . . . except any or all causes or causes of action for divorce." The court determined that this release clause, because of the "ever had or now has" language, refers to a limited release of only "then existing rights," and that the "new" right to equitable distribution and "new" right to alimony were still available. Given the differences between the limiting language of the agreement in Kutzer and the broad language of the agreement herein, it is clear that the two cases are easily distinguisable in that the Kutzer agreement did not purport to fully settle and determine the rights of the parties as we have found in the present matter.

Thus, we hold that the agreement executed by the parties on November 15, 1979 was intended to fully settle and determine the issues of alimony and property distribution, and that the agreement, therefore, is valid and binding as written, and is not affected by the provisions of the Divorce Code of 1980.

As a result of this holding, defendant's preliminary objections of July 20, 1983 should be sustained. When the sustaining of defendant's preliminary objections will result in a denial of plaintiff's claim, the preliminary objections should be sustained only in cases which are clear and free from doubt. Preliminary objections should be sustained only where it appears with certainty, upon the facts averred, that the law will not allow plaintiff to recov-

er. Dana Perfumes Corporation v. Greater Wilkes-Barre Industrial Fund, Inc., 248 Pa. Super. 295, 375 A.2d 105 (1977). Given our holding that the agreement shall be enforced against the claims of plaintiff, it is clear that counts II through IV of the complaint in divorce should be dismissed, since the agreement has fully settled and determined the issues raised in counts II through IV.

Plaintiff requests in her brief that we grant her leave to amend her complaint if we decide to sustain the defendant's preliminary objections. While we note that where a trial court sustains preliminary objections on their merits it is generally an abuse of discretion to dismiss a complaint without leave to amend, "there may, of course, be cases where it is clear that amendment is impossible and where to extend leave to amend would be futile." Otto v. American Mutual Insurance Company, 482 Pa. 202, 205, 393 A.2d 447 (1978); Harley Davidson Motor Co., Inc. v. Hartman, 296 Pa. Super. 37, 442 A.2d 292 (1982). We believe that this present matter is one of those cases where leave to amend would be to no avail, for there is no amendment that will allow plaintiff to circumvent the provisions of the agreement she voluntarily entered into prior to her marriage to defendant.

Accordingly, we enter the following

ORDER RE: PRELIMINARY OBJECTIONS TO COUNT II THROUGH COUNT IV INCLUSIVE OF THE COMPLAINT IN DIVORCE OF JULY 20, 1983

ORDER RE: PETITION TO SET ASIDE ANTE-NUPTIAL AGREEMENT OF OCTOBER 14, 1983

And now, this February 28, 1984, after an evidentiary hearing on December 6, 1983, and after

consideration of the briefs of counsel, the following has been determined:

1. The stipulation entered by the parties at the December 6, 1983 hearing and set forth in the accompanying opinion is encompassed within this order and is the order of this court.

2. Defendant's, Remy Fox, preliminary objections to count II through count IV inclusive of the complaint in divorce of July 20, 1983 are sustained and said count II through count IV of the complaint in divorce are dismissed.

3. Plaintiff's, Linda Fox, petition to set aside ante-nuptial agreement of October 14, 1983 is respectfully denied.