OPINION OF THE COURT
Joseph J. Sedita, J.
This is a motion to dismiss a counterclaim for equitable distribution in this matrimonial action based on conversion grounds, and for summary judgment.
On September 4, 1979 the parties herein executed a separation agreement after consultation with their respective attorneys. Said agreement provides for $17,680 per year in alimony for the wife with a cost of living adjustment, life insurance totaling $90,000 which designates the wife as beneficiary, and the sale or division of real and personal property. On October 3, 1980 the plaintiff husband commenced this action for divorce based on the ground that the parties had lived apart pursuant to a valid separation agreement for one year.
Since this divorce action was commenced after the effective date of the new equitable distribution law (more specifically section 236 of the Domestic Relations Law), *985 the defendant wife counterclaimed for equitable distribution. She has additionally alleged noncompliance by her husband with the agreement.
The issue of noncompliance with the agreement must be totally dismissed in that the defendant wife has not come forward with any facts or evidence to sustain her defense of noncompliance such as would be required to defeat a motion for summary judgment. (See Siegel, New York Practice, § 281; Salomon v Salomon, 102 Misc 2d 427; Hanson v Ontario Milk Prods. Coop., 58 Misc 2d 138.)
The real issue herein is a determination of the scope and comprehensivity of the agreement under review by this court. As we noted in a companion case (Gedraitis v Gedraitis, Supreme Ct, Erie County, Feb. 6, 1981, Sedita, J.), the new statute specifically provides that the validity of pre-equitable distribution law agreements is to be governed by pre-equitable distribution law standards. If the agreement under examination was bargained for at arm’s length, is not unconscionable and in clear language expresses an intent to fully settle property rights, then there simply is no “unsettled” property to be a subject for equitable distribution. If, however, the language of the agreement evidences an intent to enter into a mere “support agreement” or only a partial property settlement, then there remains, in any property not covered, a res upon which the equitable distribution law can operate. The position outlined above is substantially in accord with the leading New Jersey case on this issue. (New Jersey having enacted an equitable distribution law prior to New York, Smith v Smith, 72 NJ 350; and see our discussion of this case in Gedraitis v Gedraitis, supra.)
Having outlined in general our position on this issue, we must next examine the specifics of the agreement before us in this case in order to assess into which category this agreement might fall. The court takes special note of the following portions of this agreement: “Whereas, the parties desire to make arrangements in connection with their separation from each other including the settlement of their property rights *** and other rights and obligations growing out of their marriage relationship” (emphasis added).
*986 section six — of the agreement disposes of the real property owned by the parties,
section seven — deals with the parties’ personal property and includes the language: “The parties have heretofore agreed as to the division of all other personal effects *** and each acknowledges that the other has no claim to any such items which each has agreed shall belong to the other” (emphasis added).
section nine — primarily is a release of rights against each other’s estates but states in part: “each of the parties may, in any way, dispose of his or her property of whatever nature, real or personal” (emphasis added).
section ten — states in part: “this agreement contains the entire understanding of the parties” (emphasis added).
section eleven — the husband represents that he has made a full disclosure of his assets and financial condition prior to the signing of this agreement;
section twelve — provides for the incorporation of “all the terms and provisions of this agreement” into a subsequent divorce decree.
A Teview of this 10-page agreement as a totality and with reference to its specific language, can lead to but one reasonable conclusion. The parties herein sought in this document to fully settle their property and support rights. Part of the quid pro quo which one gives up when one enters into a comprehensive agreement such as this is the possibility that the law may change in one’s favor. A stable and sure arrangement in the present is preferred to the mere “possibility” of a better result in the future. This “trade off” is implicit in the bargain made by the parties. To permit the possibility of an ex post facto modification of a comprehensive agreement, such as this, can only lead to the discouragement of “voluntary” agreements between parties (usually favored as a matter of public policy; see Gedraitis v Gedraitis, Supreme Ct, Erie County, Feb. 6, 1981, Sedita, J., supra), and a flood of litigation.
No amount of linguistic acrobatics can cloud what was the obvious and clearly expressed intent of the parties to this agreement. (See 2 Foster-Freed, Law and the Family, § 28:25.) Where the language of an agreement is clear, *987 paroi evidence should be excluded in the interpretation of the agreement. (Fisch, New York Evidence [2d ed], §§ 41, 56-58; Benderson Dev. Co. v Schwal Bros. Trucking, 64 AD2d 447; Gedraitis v Gedraitis, supra.) There has been no basis shown for any allegation of fraud, mistake or unconscionability. The parties have made their bargain and it is the duty of the courts to hold them to it.
Accordingly, plaintiff’s motion to dismiss defendant’s counterclaim is granted. Summary judgment is granted to the plaintiff herein. The separation agreement shall be incorporated but not merged in the final decree except that the provision regarding alimony shall be merged in said decree according to the terms of said agreement.