538 A.2d 910

**James S. NIGRO, Jr., Appellee,**

v.

**Mary Lou Rago NIGRO, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 1, 1987.

Filed March 10, 1988.

Joseph S. Britton, Langhorne, for appellant.

Edward J. Weiss, Assistant District Attorney, Media, for appellee.

Before CAVANAUGH, ROWLEY and MONTEMURO, JJ.

MONTEMURO, Judge:

In this divorce action, appellant Mary Lou Rago Nigro appeals from a January 22, 1987 order of the Bucks County Court of Common Pleas declaring valid a 1976 property settlement agreement entered into by and between appellant and her husband, appellee James S. Nigro, Jr. The court found in favor of appellee and decreed that the agreement barred all claims raised by appellant in her counterclaim to appellee's complaint in divorce.

On March 21, 1985, appellee filed a complaint against appellant seeking a divorce on the grounds that the parties' marriage was irretrievably broken. Appellant answered, admitting all of appellee's allegations. Appellant also counterclaimed, asserting additional claims for divorce, child support, custody, equitable distribution, alimony, alimony *pendente lite,* spousal support, counsel fees and costs, and continued maintenance of beneficiary designations on appellee's existing life and health insurance policies. Appellee raised as a defense to the counterclaim a property settlement agreement executed by the parties on July 15, 1976. The comprehensive agreement contained provisions concerning custody of the parties' minor daughter, child support, personal property distribution, and various other economic issues. Further, the parties agreed to release their rights to seek alimony, counsel fees or expenses in any divorce action.

Appellant served upon appellee interrogatories which sought information on the claims ancillary to the divorce. Appellee then filed a motion for a protective order pursuant to Pa.R.C.P. 4012 and averred that it was unnecessary to answer the interrogatories because all matters ancillary to the divorce had been resolved by the 1976 property settlement agreement. Appellant responded that the agreement was invalid and thereafter filed a petition to set it aside. On October 31, 1985, the trial court held a consolidated

hearing on the petitions.[1] The hearing was not completed and was continued to a later date. On November 25, 1985, appellee filed a *nunc pro tunc* petition for declaratory relief and requested the court to make a judgment that the property settlement agreement was "valid and binding upon the parties and constitute[d] a bar to all claims raised by [appellant] in her Counterclaim." Appellant responded to the petition for declaratory relief, again claiming that the agreement was invalid. In new matter appellant averred that she was not advised by counsel when she signed the agreement, that the agreement did not make a "fair and reasonable provision" for appellant or the parties' child, that appellee did not fully disclose his assets to appellant at the time the parties executed the agreement and that he had in fact misrepresented his financial situation to induce appellant to sign the agreement, that appellant signed the agreement under duress, and that appellee had failed to abide by the terms of the agreement.

On March 6, 1986, the court resumed the October 1985 hearing and also considered appellee's petition for declaratory relief. On July 21, 1986, the court issued an opinion with findings of fact, a discussion of the law, and conclusions of law. Attached to the opinion was an order stating that "declaratory judgment is hereby entered against [appellant], and it is hereby Ordered and Decreed that the July 15, 1976 Property Settlement Agreement entered into by and between them is valid and continues in full effect, and is a bar to all claims raised by [appellant] in her counterclaim in this divorce action."

In accordance with Pa.R.C.P. 227.1, appellant filed a motion for post-trial relief from the July 21st opinion and order.[2] On December 8, 1986, the court heard argument on

1. The court also heard argument on appellant's petition for special relief seeking to strike a purported mortgage held by appellee on appellant's home.

2. Pursuant to Pa.R.C.P. 1602, "[i]n any action at law ..., a party may include in the claim for relief a prayer for declaratory relief and the practice and procedure shall follow, as nearly as may be, the rules governing that action." Pennsylvania Rules of Civil Procedure 1920.1

the motion, and on January 22, 1987, issued its final opinion and order on the matter. The order dismissed and denied appellant's exceptions and affirmed the prior order of July 21, 1986, wherein judgment was declared in favor of appellee. Appellant now brings a timely challenge to the January 22, 1987 order and raises the following issues on appeal:

(1) Whether the property settlement agreement should be set aside on the basis that the trial court improperly concluded that a reasonable provision was made for appellant.

(2) Whether the property settlement agreement should be set aside on the basis that appellee did not make a full and fair disclosure of his worth.

(3) Whether the trial court erred by failing to allow appellant to pursue discovery through interrogatories prior to ruling on the validity of the property settlement agreement.

(4) Whether the property settlement agreement should be voidable on the basis that appellee's counsel had a conflict of interest in drafting the agreement.

(5) Whether the property settlement agreement should be set aside on the basis of general contractual principles.

(6) Whether the trial court erred in concluding that appellee had substantially complied with the terms and conditions of the property settlement agreement.

■ Before reaching the merits of this case, we raise *sua sponte* the question of whether the January 22, 1987 order, issued prior to the entry of a final decree in divorce, is final. A final order has been defined variously as one that (1) ends the litigation or disposes of the entire case; (2) effectively puts the litigant "out of court"; or (3) precludes a party from presenting the merits of his or her claim to the trial court. *Fried v. Fried*, 509 Pa. 89, 93–94, 501 A.2d 211, 213

to 1920.92 govern divorce actions. Rule 1920.52(a) provides in pertinent part that "[i]n claims involving ... the enforcement of marital agreements ... the trial judge shall enter a decision which shall state the reasons therefor. The practice and procedure thereafter ... shall be in accordance with the Rules of Civil Procedure 227.1 to 227.4 inclusive."

(1985). To determine the finality of an order which does not on its face appear final, a court should look beyond the technical effect of the adjudication to its practical ramifications. *Id.*, 509 Pa. at 94, 501 A.2d at 214. In the instant case, the January 1987 order is final even though it does not dispose of the entire divorce action. The court's determination that the property settlement agreement is valid precludes consideration of economic issues in the divorce action, prevents appellant from presenting her claim to the court and, thereby, places her "out of court" on her counterclaim. Our disposition of the appeal in *Laub v. Laub*, 351 Pa.Super. 110, 505 A.2d 290 (1986), a case similar to the one now before us, supports our conclusion that the January 1987 order is final and appealable. There, we entertained appellant's appeal from a decree finding valid two ante-nuptial agreements executed by the parties. The trial court had not yet issued a divorce decree but had found the parties' ante-nuptial agreements to be a bar to appellant's claims for equitable distribution, alimony, support and counsel fees. The order in the case before us is analogous to the order in *Laub.*

Having found that we have jurisdiction to entertain appellant's appeal, we now address the merits of the case and affirm the trial court's January 22, 1987 order. Appellant had a burden in this case to "demonstrate by clear and convincing evidence that the agreement did not make reasonable provision for her, *and* that it was entered into without full and fair disclosure" by appellee, *In re Estate of Geyer*, 516 Pa. 492, 502, 533 A.2d 423, 427 (1987) (plurality).

■ Appellant first argues that the trial court erred in concluding that the property settlement agreement made reasonable provision for her. Reasonableness is determined *"as of the time of the Agreement"* and depends upon the totality of the facts and circumstances at the time of the agreement's execution. *In re Hillegass Estate*, 431 Pa. 144, 150–51, 244 A.2d 672, 675–76 (1968). Some factors that a court takes into account when it examines the reasonableness of an agreement are (1) the financial status and

standard of living of the parties, (2) the age of the parties, and (3) the intelligence of the parties. *Cf. id.* (antenuptial agreement). We agree with the trial court that appellant has failed to demonstrate by clear and convincing evidence that the agreement did not make a reasonable provision for her. *See* Trial Court Opinion at 2.

The agreement required appellee (1) to pay to appellant $10,000 upon the entry of a final divorce decree; (2) to pay to appellant $100 per week for a year following the commencement by husband of a divorce action; (3) to pay appellant's medical expenses for the year following the commencement of a divorce action; (4) to pay $900.00 towards appellant's dental bills; (5) to pay the $700.00 balance of a loan in appellant's name; (6) to pay $60.00 per week in child support; (7) to pay the expenses for the parties' daughter's private education; and (8) to maintain health insurance for the parties' daughter. The agreement also provided that appellant would retain all of her own personal property and all of the furniture from the parties' home, with the exception of a pool table and appellee's personal effects. Appellee testified, and the trial court accepted as true, *see* trial court opinion at 3, that at the time the agreement was executed he was facing serious financial difficulties. Under the totality of these facts and circumstances, appellant has not supported her contention that the agreement did not reasonably provide for her and the parties' daughter.

■ Appellant next argues that the property settlement agreement should be set aside because there was no full and fair disclosure of appellee's worth. Disclosure between the parties need not be exact, but it must be "full and fair." *Geyer, supra,* 516 Pa. at 502, 533 A.2d at 427 (citing *Kaufmann Estate,* 404 Pa. 131, 136, n. 8, 171 A.2d 48, 51 n. 8 (1961)). Full and fair disclosure need not disclose the exact amount of property but must be precise enough so as not to "obscure the general financial resources of the parties," *Geyer, supra,* 516 Pa. at 502, 533 A.2d at 427. The Pennsylvania Supreme Court noted in *Geyer* that

"whether adequate disclosure has been made will depend upon the facts and circumstances of the particular situation." *Id.*, 516 Pa. at 502, 533 A.2d at 428. Under the facts and circumstances in the case before us, appellant has failed to prove that she was deprived of full and fair disclosure of appellee's worth at the time the agreement was executed. At the time the parties executed the 1976 agreement, appellee had an interest in three pizza stores, all of them suffering financially. Appellant provided extensive testimony concerning appellee's pizza business. She worked in all of the stores on a regular basis (N.T., October 31, 1985, at 16, 77); she managed one of his stores (*id.* at 16); she knew appellee's weekly salary (*id.* at 17–18); and she knew the approximate gross daily receipts from the store she managed (*id.* at 45–46). Appellant also testified that she was not, at the time of the 1985 hearing, aware of any of appellee's assets of which she had been unaware in 1976. *Id.* at 77–78. Appellant is an intelligent woman who had sufficient knowledge of her husband's business for there to have been full and fair disclosure at the time the parties executed the 1976 agreement.

■ Next, appellant contends that the trial court erred by making a ruling on the validity of the agreement without first allowing appellant to pursue discovery through interrogatories. In its opinion, the trial court states that it can recall "no request that this case be delayed in order to accomplish discovery; rather, both sides showed an anxiety to promptly move forward with evidence and the taking of testimony." Trial Court Opinion, January 22, 1987, at 7. Moreover, the trial court did not need in-depth property valuation information to make a decision on the reasonableness of the agreement. On its face, the agreement could be judged for whether it made reasonable provision for appellant. Further, by her testimony, appellant demonstrated that in 1976 she was knowledgeable about her husband's business and assets. The trial court had before it all the information it needed to make a determination concerning the validity of the 1976 agreement.

■■■■ Appellant next seeks to set aside the agreement on the basis that appellee's counsel had a conflict of interest in drafting the property settlement agreement. The trial court found as a fact that appellant "knowingly and voluntarily" waived her right to independent counsel. Trial Court Opinion, July 21, 1986, at 3 (Factual Finding 8). We will not set aside a trial court's factual finding unless there is no competent evidence in the record to support such a finding. *Jenks v. Avco Corp.*, 340 Pa.Super. 542, 490 A.2d 912 (1985). We find ample support in the record for the trial court's conclusion. Specifically, appellant, both prior to and after the drafting of the agreement, had the benefit of counsel for other legal matters. She was therefore aware that she could protect her rights by obtaining legal counsel. Moreover, she actively participated in formulating the provisions of the agreement. We also note that appellant did sign each page of the agreement. Paragraph 17 of the document states that "[b]oth Husband and Wife have been advised of their right to separate legal counsel of their own free choice but have indicated their desire to simply reduce the agreement reached between themselves to writing." Because there is no evidence that appellant was coerced into signing this agreement, we find this paragraph presumptively persuasive of the fact that appellant voluntarily waived her right to independent counsel. *See Erie County v. American States Ins. Co.*, 573 F.Supp. 479, 486 (W.D.Pa.1983), *aff'd*, 745 F.2d 45 (3d Cir.1983) (person who signs an agreement is conclusively presumed to know its contents and to assent to them).

Appellant further contends that the agreement should be set aside on the basis of "general contractual principles." Appellant appears to argue that (1) appellee's attorney, who drew up the agreement and who had represented appellant in other matters, abused his confidential relationship with appellant by allowing her to sign the agreement, (2) both appellee and his attorney used undue influence to obtain appellant's signature on the agreement, and (3) that appellant, due to her emotional state at the time of the parties' separation, lacked the mental capacity to contract. We find

absolutely no merit to any of appellant's arguments. There is no evidence in the record to support any of these allegations.

■ Finally, appellant argues that the trial court erred in finding that appellee had substantially complied with the terms of the agreement. We cannot agree. The trial court made a finding of fact that appellee had substantially complied with the terms of the agreement, "which admittedly ha[d] been modified by mutual understanding and course of conduct, not evidenced by the parties' consents in writing, from time to time since its execution." Trial Court Opinion, July 21, 1986, at 4–5. Moreover, the court found appellee and his witnesses to be credible. *Id.* Because we will not disturb the trial court's findings concerning credibility as long as they are not manifestly erroneous, *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 464 A.2d 1243 (1983), we accept the court's findings on credibility. The two major issues regarding appellee's compliance with the agreement were whether appellee had paid to appellant $10,000.00 and whether appellee had made payments to appellant of $100.00 per week for one year after the commencement of the divorce action in accordance with the agreement. The trial court found specifically, and there is ample support in the record for such findings, that instead of paying appellant the $10,000.00 when the divorce was final as the agreement provided,

> upon [appellant's] request in . . . 1979 the parties entered into an agreement whereby [appellee] arranged for that sum of money to be furnished to [appellant], conditioned upon her executing a mortgage on his behalf which would be recorded against her newly purchased property, subject to the further agreement that a satisfaction piece would then be held in escrow until either a divorce decree was entered or the death of either party, in which event the satisfaction piece would be recorded.

Trial Court Opinion, July 21, 1986, at 4 (Factual Finding 13). The trial court also found that

[appellee] has actually paid [appellant] $100.00 per week from the date of the execution of the Agreement to the time of the hearing of this case. Taking into account [appellee's] obligation to pay $60.00 per week as child support during that period of time, [appellee] has paid to [appellant] for her benefit the weekly sum of $40.00 for a period of time well in excess of eight years, constituting a substantial overpayment of his obligation under ... the Agreement.

*Id.*

In accordance with the foregoing discussion, we affirm the trial court's January 22, 1987 Order.

Order affirmed.