551 A.2d 324

Joan GULA, Appellant,

v.

John GULA, Appellee.

Superior Court of Pennsylvania.

Argued Sept. 26, 1988.

Decided Dec. 7, 1988.

Bruce E. Cooper, Harrisburg, for appellant.

Before KELLY, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

This is an appeal from an order entered on February 9, 1988 by the Schuylkill County Court of Common Pleas which dismissed the appellant's exceptions to the Master's report and adopted his recommendation that the parties' 1971 ante-nuptial agreement is valid and enforceable.[1] We affirm.

Herein, the appellant, Joan Gula, alleges that the parties' ante-nuptial agreement is invalid and unenforceable because: 1) the agreement did not make reasonable provision for her; and 2) the agreement did not make a full and fair disclosure. More specifically, she alleges that the agreement does not disclose the statutory rights created by the Divorce Code of 1980 which she relinquished in the event of a separation or divorce. We find that the agreement made a full and fair disclosure. Consequently, we, too, find that the ante-nuptial agreement is valid and enforceable.

The record reveals that, following an extended relationship during which one child was born and another was conceived, Joan and John Gula married on July 2, 1972. Eventually, the marriage failed, and, on July 20, 1981, the appellant instituted divorce proceedings. Thereafter, the appellee, John Gula, interposed their ante-nuptial agreement as a defense against the appellant's related claims for equitable distribution and alimony.

The ante-nuptial agreement was signed by the parties on December 21, 1971. The agreement provided, *inter alia*, that, upon the appellee's death, the appellant would receive $5000.00 as full satisfaction of all claims, statutory or otherwise, against the appellee's estate. The agreement specifically stated that a full and fair disclosure of the

---

1. Before reaching the merits of this appeal, we note that the order of February 9, 1988 *sub judice* is a final appealable order, despite the fact that the appellant filed her appeal prior to entry of a final divorce decree. *See e.g. Nigro v. Nigro*, 371 Pa.Super. 625, 538 A.2d 910, 912–913 (1988); *Laub v. Laub*, 351 Pa.Super. 110, 505 A.2d 290 (1986). We further note that, subsequent to the filing of the present appeal, a final divorce decree was entered on September 28, 1988, which granted divorce to the parties and denied ancillary relief to the appellant pursuant to the order of February 9, 1988.

extent and value of their respective estates and current assets was made. Further, the agreement valued the appellee's business and personal assets between the sums of $90,000.00 and $130,000.00; however, no itemization of the assets was included as a part of the agreement. The agreement included the following addendum which is the focal point of this appeal:

It is further agreed between HUSBAND and WIFE that in the event that a final decree in divorce is entered at anytime between HUSBAND and WIFE, or if HUSBAND and WIFE become separated, that the rights of each of the parties shall be the same as stated within the Antenuptial Agreement, to which this addendum is attached on the date above mentioned, to wit, five thousand dollars upon the death of HUSBAND to WIFE and nothing from WIFE's estate.

After a hearing, the Master found that: 1) $5000.00 upon the appellant's death was not reasonable provision for the appellee, a dependent spouse; and 2) full and fair disclosure of the appellee's assets had been made. Accordingly, the Master upheld the validity of the ante-nuptial agreement. The lower court agreed that the ante-nuptial agreement was valid and enforceable, and this appeal followed.

Recently, in *In re Estate of Geyer*, 516 Pa. 492, 533 A.2d 423 (1987) (Plurality), our Supreme Court dealt with the issue of the enforceability of ante-nuptial agreements. The *Geyer* Court quoted extensively from their lead decision of *In re Hillegass Estate*, 431 Pa. 144, 244 A.2d 672 (1968), as follows:

(1) An Antenuptial Agreement is presumptively valid and binding upon the parties thereto.

(2) *The person seeking to nullify* or avoid or circumvent the Agreement has the burden of proving the invalidity of the Agreement by clear and convincing evidence that the deceased spouse at the time of the Agreement made *neither (a) a reasonable provision for the intended spouse, nor (b) a full and fair disclosure* of his (or her) worth.

(3) In evaluating the reasonableness of the provision for the survivor, such reasonableness must be determined as *of the time of the Agreement* and not by hindsight. *Reasonableness* will depend upon the totality of all the facts and circumstance *at the time of the Agreement,* including (a) the financial worth of the intended husband; (b) the financial status of the intended wife; (c) the age of the parties; (d) the number of children each has; (e) the intelligence of the parties; (f) whether the survivor aided in the accumulation of the wealth of the deceased spouse; and (g) the standard of living which the survivor had before marriage and could reasonably expect to have during marriage.

(4) Full and fair disclosure does not require the disclosure of the *exact* amount of his or her property.

(5) Even where there is a valid Antenuptial Agreement, this does not prohibit subsequent inter vivos gifts and testamentary bequests to a surviving spouse.

*Estate of Geyer,* 516 Pa. at 501–502, 533 A.2d at 427, quoting *Hillegass Estate,* 431 Pa. at 150–151, 244 A.2d at 675–676 (emphasis in original, citations omitted).[2]

After reiterating the well established law regarding antenuptial agreements, the *Geyer* Court expanded the requirements for a "full and fair disclosure." The Court stated:

We therefore think it is fair and reasonable, as well as sound judicial policy, to require that any agreement which seeks to change the duly enacted public policy of this Commonwealth must be based on nothing less than full and fair disclosure. Such disclosure must include both the general financial pictures of the parties involved, and

---

**2.** We note that both *Estate of Geyer, supra,* and *Hillegass Estate, supra,* deal with the application of ante-nuptial agreements upon the death of a spouse. However, both cases have equal application when the triggering mechanism is a separation or divorce when the agreement is actually a post-nuptial contract. *See Simeone v. Simeone,* 380 Pa.Super. 37, 551 A.2d 219 (1988); *Nigro v. Nigro,* 371 Pa.Superior Ct. 625, 538 A.2d 910; *Nitkiewicz v. Nitkiewicz,* 369 Pa.Super. 504, 535 A.2d 664 (1988).

evidence that the parties are aware of the statutory rights which they are relinquishing.

*Estate of Geyer,* 533 A.2d at 429–430 (footnote omitted).

The foregoing statement not only appears to require a full and fair disclosure including a complete disclosure of statutory rights but also appears to require a full and fair disclosure *regardless* of the reasonableness of the provision for the intended spouse. However, such a holding is clearly contrary to the language of *Hillegass, supra,* which the *Geyer* Court quoted without reservation. In *Simeone v. Simeone, supra,* we resolved this apparent conflict as follows:

Accordingly, our interpretation of *Geyer* is as follows: (1) the concept of "full and fair disclosure" was expanded to include the disclosure of statutory rights; and (2) the *Hillegass* holding that ante-nuptial agreements are valid in the presence of *either* full and fair disclosure or a reasonable provision for the intended spouse remains unchanged.

*Simeone v. Simeone, supra,* 551 A.2d at 223 (emphasis in original).[3]

Instantly, we will assume *arguendo* that $5000.00 was not reasonable provision for the appellant.[4] Now, we must discuss whether a full and fair disclosure was made. Full and fair disclosure does not require disclosure of the exact amount of the party's assets; rather, there must be a sufficient disclosure to allow the intended party to make an informed decision concerning the rights which are relinquished pursuant to the agreement. *Estate of Geyer,* 516 Pa. at 501, 533 A.2d at 427; *Kaufmann's Estate,* 404 Pa. 131, 171 A.2d 48 (1961); *Nigro v. Nigro,* 371 Pa.Superior Ct.

3. For an in depth discussion of how this conclusion was reached, see *Simeone v. Simeone, supra,* 380 Pa.Superior Ct. at 41–46, 551 A.2d at 221–223.

4. For examples of evaluation of the reasonableness of a provision for an intended spouse, see *Simeone v. Simeone, supra,* 380 Pa.Superior Ct. at 42–48, 551 A.2d at 222–224; *Nigro v. Nigro,* 371 Pa.Superior Ct. at 630–631, 538 A.2d at 913; *Estate of Geyer,* 516 Pa. at 502, 533 A.2d at 428–429; *Hillegass Estate,* 431 Pa. at 150–152, 244 A.2d at 675–676.

at 631, 538 A.2d at 913–914; *Nitkiewicz v. Nitkiewicz*, 369 Pa.Superior Ct. at 510, 535 A.2d at 667. In the agreement, the appellee disclosed that his assets at the time of the agreement were valued between $90,000.00 and $130,000. The agreement further provided that full disclosure was made by the appellee and that the appellant was invited to examine in detail the appellee's finances.

Absent evidence to the contrary, we are constrained to hold that the appellee fully and fairly disclosed his worth. Instantly, the appellant bears the burden of proving the invalidity of the agreement by clear and convincing evidence of the appellee's failure to disclose his worth fully and fairly. *Nigro v. Nigro*, 371 Pa.Superior Ct. at 631, 538 A.2d at 913, citing *Estate of Geyer*, 516 Pa. at 501–502, 533 A.2d at 427. The record, however, is void of any evidence which would indicate that the valuation included in the agreement was not accurate. Therefore, we find that the appellee fully and fairly disclosed his financial status.

Now, we turn to the crucial issue of this case, whether the appellee was required to disclose the statutory rights which the appellant relinquished when, in fact, those rights were not created until after the parties entered into the ante-nuptial agreement.[5] The law is clear in Pennsylvania; parties may, through an ante-nuptial or post-nuptial agreement, contract away their statutory rights to alimony and support. *Simeone v. Simeone, supra; Nigro v. Nigro, supra; Nitkiewicz v. Nitkiewicz, supra; Laub v. Laub, supra.*

Instantly, the appellant claims that a full and fair disclosure did not occur because she was not apprised in the agreement of her statutory rights to alimony and equitable

5. In *Simeone v. Simeone, supra*, we were asked to address the very question now before us, i.e., whether the ante-nuptial agreement is rendered void when the appellant lacked an awareness of the statutory rights she relinquished upon its execution. However, we did not reach the issue since we found that the agreement made reasonable provision for the appellant. *Simeone v. Simeone, supra*, 380 Pa.Superior Ct. at 48, 551 A.2d at 224.

distribution created by the Divorce Code of 1980. Ruling upon similar facts, in *Laub v. Laub, supra,* we held that the Divorce Code does not affect a marital agreement entered into prior to the effective date of the Divorce Code. In so ruling, we set forth the following discussion:

> The agreements were entered into prior to the effective date of the Divorce Code which provides in Section 103:
>
>> This Act shall not affect any marital agreement executed prior to the effective date of this act or any amendment or modification thereto.
>>
>> 1980, April 1, P.L. 63, No. 26, § 103, effective in 90 days.
>
> Not only does the Act itself provide that it shall not affect a marital agreement entered into before the effective date of the Act, but the question was addressed in *Wolfe v. Wolfe,* 341 Pa.Super. 313, 318, 491 A.2d 281, 283 (1985) which held that a valid post-nuptial agreement entered into prior to the effective date of the Divorce Code bars a claim for equitable distribution under the Code. In *Wolfe,* the wife claimed that the post-nuptial agreement was not complete because she could not waive her right to equitable distribution since the right had not yet come into existence. We quoted from a New York decision in *Boss v. Boss,* 107 Misc.2d 984, 436 N.Y.S.2d 167 (1981) dealing with a New York statutory provision similar to 23 P.S. § 103 wherein the court stated:
>
>> Part of the quid pro quo which one gives up when one enters into a comprehensive agreement such as this is, [sic] the possibility that the law may change in one's favor. A stable and sure arrangement in the present is preferred to the mere "possibility" of a better result in the future.
>
> *Boss v. Boss,* 107 Misc.2d 984, 436 N.Y.S.2d 167 (1981).
>
> The fact that the instant case involved a pre-marital agreement rather than a post-nuptial agreement is of no material consequence.

*Laub v. Laub,* 505 A.2d at 292–293.[6]

We reiterate that an ante-nuptial agreement entered into prior to the effective date of the Divorce Code is not affected by the Divorce Code with respect to those statutory rights created after the contract was made. Even in light of our holding in *Simeone v. Simeone, supra,* and our Supreme Court's plurality decision in *Estate of Geyer, supra,* which require disclosure of statutory rights, we hold that parties are not required to disclose those rights which have yet to be created in order to insure the validity of their ante-nuptial agreement.[7] Certainly, want of a disclosure of statutory rights which are not in existence at the time of entering an ante-nuptial agreement does not invalidate an otherwise valid and enforceable agreement. Instantly, we find the parties ante-nuptial agreement is valid and enforceable, despite the fact that the agreement did not disclose her statutory rights pursuant to the Divorce Code of 1980. Consequently, the appellant's claims for equitable distribution and alimony are barred by the anti-nuptial agreement. Order affirmed.

ORDER AFFIRMED.

6. In *Laub v. Laub, supra,* we pointed to a Montgomery County case as support for our decision, stating:
   In *Fox v. Fox,* 114 Montgomery County L.R. 145 (1984) the parties entered into an ante-nuptial agreement in which the parties waived rights to alimony pendente lite, counsel fees, costs and support. Both parties agreed that they could dispose of their own property and each waived statutory rights and common law rights in the property of the other. The court held that the agreement was valid and under Section 103 of the Divorce Code with respect to equitable distribution and alimony.
   *Laub v. Laub,* 505 A.2d at 293.

7. While not reaching the issue before us, this court in *Simeone v. Simeone, supra,* 380 Pa.Superior Ct. at 46, 551 A.2d at 223, intimated the decision we reach instantly, when we noted, "In *Laub,* we also held that under Section 103 of the Divorce Code of 1980, agreements entered into prior to the effective date of the act, would not be affected by the act nor any modification or amendment thereto. This is important as appellant claims that she was not informed of her statutory rights; however, it was not until the Divorce Act of 1980 that many of her claims arose."