580 A.2d 357

**E. Kay HESS, Appellee,**

**v.**

**James G. HESS, Appellant.**

Superior Court of Pennsylvania.

Argued May 1, 1990.

Filed Sept. 10, 1990.

Reargument Denied Oct. 19, 1990.

William J. Gallagher, Kennett Square, for appellant.

David E. Auerbach, Media, for appellee.

Before DEL SOLE, JOHNSON and HOFFMAN, JJ.

DEL SOLE, Judge:

Husband and Wife entered into a property settlement agreement as part of their divorce action. The agreement distributed several parcels of land. One of those parcels of land was known as the "Bypass Garage." The other parcel was at the rear of the Bypass Garage and was referred to as the "Rear Garage." In the property settlement agreement the Bypass Garage was valued at $25,000.00. The Rear Garage was owned by Husband and his mother. Husband's share in the Rear Garage was valued at $20,000.00.

At the time of the execution of the property settlement agreement, without Wife's knowledge, Husband was negotiating to sell both the Bypass Garage and the Rear Garage to prospective buyers for $800,000.00. The property settlement agreement was signed on July 21, 1983. Option agreements were signed by Husband and the buyers on September 14, 1983. The agreement of sale was signed on November 7, 1984 after the buyers received zoning approval. In the property settlement agreement both Wife and Husband agreed to make a full, complete and accurate disclosure of all assets. Wife brought this action alleging both fraud and breach of contract. The jury returned a general verdict of $200,000.00 in compensatory damages and $40,000.00 in punitive damages without stating on which theory it was allowing recovery.

The first issue raised by Husband is whether the trial court erred when it overruled Husband's preliminary objections and failed to direct a verdict in Husband's favor

on the issue of punitive damages. Husband argues that Wife's lawsuit against him was based on a contract theory and punitive damages may not be awarded in a breach of contract suit. The trial judge instructed the jury that if it simply found a breach of contract then it should only award compensatory damages. If it found that fraud had been committed then it could award both compensatory damages and punitive damages. The trial judge stated that it would be possible for the jury to find in favor of Wife on either count; we agree.

While it is true that punitive damages are not awarded in breach of contract cases, this rule does not restrict a party from bringing alternative claims in tort and contract where warranted by the facts. Here, the husband's actions in failing to disclose the ongoing negotiations involving certain properties give rise to two separate causes of action. The first is based on the property settlement agreement and the husband's breach of the warranty of full disclosure. Such an action would result in compensatory damages. The second cause of action is in tort based upon the alleged fraud committed in negotiating the property settlement agreement. Under this theory, the defendant would be liable for both compensatory and punitive damages. The trial court properly charged on both theories; and, from the jury's verdict, it is obvious that the plaintiff sustained her burden of proof in establishing the fraud committed by the defendant.

Our review of the record convinces us that the evidence was sufficient to warrant this finding.

We know that in order to impose punitive damages, the wrongful conduct must be outrageous. Conduct is outrageous when it is "malicious, wanton, reckless, willful or oppressive." *Rizzo v. Haines*, 520 Pa. 484, 506, 555 A.2d 58, 69 (1989). Such conduct must show the actor's evil motive or reckless indifference to the rights of others. *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (1984). Husband's conduct falls into this category. He signed a contract with his wife that stated that he was fully disclosing

the value of all of the assets in the marital estate. At the same time he was negotiating to sell two of the assets for 200% more than the value he was disclosing to Wife. This type of outrageous conduct can only be punished and deterred by punitive damages.

■ The second and third issues raised by Husband argue that there was insufficient evidence to support either the fraud count or the breach of contract count. The elements of fraud are (1) a misrepresentation, (2) a fraudulent utterance, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as the proximate result. *Delahanty v. First Pennsylvania Bank*, 318 Pa.Super. 90, 464 A.2d 1243 (1983). At trial, evidence was produced that Husband signed the agreement which stated that the properties were worth a total of $45,000.00 when at the same time he was negotiating to sell them for $800,000.00. Husband's failure to give the true value of the properties caused Wife to sign the agreement that gave an undervalued worth of the properties. The result of Husband's actions was Wife lost her share of the $800,000.00 that Husband received for the properties. We hold that there was sufficient evidence for the jury to find that Husband had committed fraud.

■ Husband also argues that he did not breach the contract created by the property settlement agreement because it did not require the parties to disclose the "exact amount" of the value of the parties' property. Contrary to this argument, both Husband and Wife agreed, by signing the document, that they would give a full and complete disclosure of "all assets of any nature and of all other facts relating to the subject matter of this agreement." They also warranted that the lists of assets and liabilities they gave were accurately set forth.

■ It is unconscionable that Husband could now argue to us that these parts of the agreement did not require him to disclose to Wife that the true value of the properties was

*twenty times* more than what was in the agreement. The disclosure of the "exact amount" of the value of assets may not be required. *Nigro v. Nigro,* 371 Pa.Super. 625, 538 A.2d 910 (1988). Fair and full disclosure, however, requires that a reasonable estimate of the worth of the assets must be attempted so that the general financial resources of the parties are not obscured. *Nigro,* supra. Because Husband did not even attempt to fully disclose the value of these properties, he breached the contract. We hold that there was sufficient evidence for the jury to come to this conclusion as well.

The fourth issue raised by Husband is that the jury verdict was excessive. Husband argues that the compensatory damages should have been nominal and that Wife's attorney, in his closing argument, miscalculated the tax consequences to Husband. We first note that a jury does not have to determine damages with mathematical precision, but only with a reasonable degree of certainty. *Standard Pipeline Co. v. Solomon and Teslovich, Inc.,* 344 Pa.Super. 367, 496 A.2d 840 (1985).

Wife presented evidence that the total amount received by Husband for his interest in the properties which was not disclosed to her was $567,562.00. After subtracting expenses, such as the mortgage and taxes, the net amount received by Husband was $401,576.00. The jury awarded Wife $200,000.00 in compensatory damages or approximately one-half of the net amount received by Husband. We hold that there was no error in this computation. Because Wife presented evidence of actual damages there was no reason for the jury to award her only nominal damages.

In his closing argument, Wife's attorney stated that the tax consequences to Husband were around $80,000.00. Husband testified that his tax consequences of the sale of the property was approximately $87,488.00. This was a determination of fact to be made by the jury and they could reject or accept Husband's testimony. There was no error committed if they chose to reject it.

■ The fifth issue raised by Husband is that the trial court erred by allowing into evidence testimony about Husband's alleged marital misconduct. Wife's attorney stated at closing argument that "the wife of eighteen years was not going to get a piece of the big pie, somebody else was." (Notes of Testimony, 1/26/89, p. 116). The trial court dealt with this issue as follows:

Regarding this particular remark, the record shows that (Wife's) counsel asked Wife question relative to the separation that led to the agreement. She testified, without objection, that (Husband) had told her that he was involved with another woman and that her name was Rose Raven. (N.T. 1/25/89, pp. 33-34). (Wife's) counsel then asked who moved in with (Husband) when he moved in August of 1983. (Husband's) counsel objected and that objection was overruled. Wife testified that (Husband) moved in with his girlfriend, Rose. (N.T. 1/24/89, pp. 51-53).

It is clear that the evidence of when the parties had separated and the timing of the separation was background information that was relevant and material for the jury to understand the circumstances of the separation. In addition, it is also clear that (Wife) was attempting to show, by the timing of (Husband's) moving in with Rose Raven, that (Husband) had an intent to deceive and defraud (Wife). If (Husband) was trying to preserve the money for his new girlfriend and the woman he eventually married, it is clear that this was relevant evidence for the jury to consider in determining whether fraud existed.

(Trial Court opinion at p. 17). Because the trial court's reasoning is convincing on this issue, we adopt it as our own and hold that the trial court did not err by allowing such testimony.

■ The sixth issue raised by Husband is that the trial court erred when it allowed Wife's counsel to say in his closing argument that Husband's attorney in the land deal was not going to give Wife any records. The attorney did not give Wife any records until he was subpoenaed. Hus-

band objected on the grounds that this statement that the attorney was not going to give Wife any records was outside the scope of the counsel's argument. The trial court disagreed and so do we. Neither Husband nor the attorney came forward with any records during the property settlement agreement negotiations nor during the sales negotiations. Given the amount of concealment of information that occurred while the sales agreement was being negotiated, we cannot say that the trial court erred by allowing this statement to be made by Wife's counsel.

Husband's final issue is that the trial court erred by rejecting three of the points of charge that he presented to the court. This issue is meritless. A careful review of the trial court's twenty-one page charge to the jury shows that the trial judge went over both causes of action and how damages should be calculated for each. There was no error committed by the trial court with these instructions and the additional instruction requested by Husband would have been merely repetitive.

Judgment affirmed.