## Cullen v. Cullen

C.P. of Monroe County, no. 1511 CV 2004.

*Robert M. Maskrey Jr.,* for plaintiff.
*Ellen C. Schurdak,* for defendant.

WORTHINGTON, *J.,* December 7, 2004—Plaintiff, James P. Cullen (husband), and defendant, Traci L. Cullen (wife), were married on March 25, 2000. No children were born of the union. The parties' relationship deteriorated and husband left the marital residence on January 16, 2003. The parties have been separated since that time. Husband and wife executed a property settlement agreement on November 6, 2003. The issue before us is whether the property settlement agreement executed by husband and wife is a valid and enforceable contract.

In the spring of 2003, wife retained counsel to draft a property settlement agreement. She then approached husband and requested that he sign the agreement. Wife, admittedly, never provided a copy of the agreement to husband, however, a copy was available at the marital residence at all times for him to review. Although husband declined to execute the agreement initially, he eventually agreed to sign it pending a renegotiation of its terms. As part of the renegotiation, husband requested an additional cash payment and the deferred transfer of

a Nissan pickup truck, which was titled in wife's name, pending the restoration of his driver's license. Wife acquiesced in his requests and husband's revisions were incorporated into the agreement. On November 6, 2003, both parties signed and executed the property settlement agreement which did not include a schedule of the parties' assets.

On or about March 2, 2004, husband filed a complaint in equity in which he averred that the agreement was unenforceable and should be rescinded. He alleged that wife failed to provide him with full disclosure of the parties' financial resources prior to their entry into the agreement, and that wife secured his joinder into the agreement by means of fraudulent misrepresentation. Wife filed an answer and counterclaim on March 29, 2004, in which she alleged that husband has refused to comply with the terms of the negotiated property settlement agreement and requested that we enter an order directing husband to execute any and all documents required by the agreement. A bench trial was held on October 13, 2004. We find in favor of the defendant on plaintiff's complaint and on defendant's counterclaim.

Before undertaking our analysis, we would like to note the following facts. There is a disparity with regard to the respective educational backgrounds of the parties. Husband is a high school graduate. Wife graduated from high school, obtained a bachelor of arts degree in finance, and is currently pursuing a master's degree. Additionally, we note that this was husband's second marriage. This is only significant insofar as husband has admitted that upon the dissolution of his first marriage, he and his

former wife executed a property settlement agreement to distribute the marital property.

Upon hearing the testimony of husband and wife, we have determined that several facts are undisputed. It is understood that no appraisals of the marital home were ever completed and neither party ever consulted an appraiser or discussed a likely appraised value for the marital home. The parties agree that negotiations of the agreement continued from March of 2003 until November of 2003, at which time the agreement was finally executed. Neither party disputes that husband was able to successfully negotiate a higher cash payment from wife prior to signing the agreement, increasing the amount he was to receive from $2,500 to $3,500. Additionally, it is undisputed that wife did, in fact, tender the Nissan pickup truck and $3,500 in cash payments to husband in accordance with the terms of the agreement. Finally, both parties agree that husband never asked for a list of financial accounts held by wife at any time prior to the execution of the agreement.

Husband now contests the validity of the property settlement agreement. He contends that subsequent to his entry into the agreement, he came to realize that the value of the marital residence was worth much more than the parties had believed. Additionally, after signing the agreement, husband conducted a search of some of wife's financial records, which were located in an unlocked filing cabinet in the marital home, and discovered the existence of certain assets of which he had previously been unaware. Husband therefore asserts that he was uninformed, at the time he executed the agreement, that wife held the following accounts in her own name: a Road-

way Express Inc. 401(k) stock savings pension plan, a Mellon Bank certificate of deposit (CD), and a Dreyfus Investment individual retirement account (IRA).

Conversely, wife claims that she did not hide personal assets from husband. Both parties agree that during the course of their marriage, wife kept all of her financial records in an unlocked filing cabinet in the marital home, which was easily accessible to husband. Wife therefore claims that even if husband never chose to look through those files during the course of the parties' marriage, after their separation, once husband was faced with the prospect of signing the agreement, he could have entered the marital residence to investigate those reports and determine the nature and extent of her personal assets.

Wife further claims that husband was aware of her assets due to his participation in the preparation of the parties' joint income tax returns. Husband and wife privately completed a joint income tax return for the 2001 tax year. The parties had a joint income tax return professionally completed by husband's accountant for the 2002 tax year. Both the 2001 and 2002 tax returns reflect the existence of the Mellon Bank CD and the Dreyfus IRA.

Additionally, wife claims that during the course of their marriage, she and husband would sit down together on a bi-weekly basis and review all of the mail that was received by the household. After sorting the mail, the parties would then pay the bills together. Wife contends that because of the parties' bi-weekly mail-opening sessions, and because of the joint filing of their tax returns, husband was put on notice and should have been aware of wife's assets. Moreover, wife testified that husband was

physically present at Mellon Bank when she opened her certificate of deposit. For the foregoing reasons, it is wife's contention that husband was free to inquire about her Mellon Bank CD, her Dreyfus Investment IRA, and her 401(k) pension plan at Roadway before executing the agreement.

Husband admits that wife fully controlled the parties' finances throughout the marriage. However, with regard to the parties' income tax preparation, husband claims that his involvement was limited to providing his W-2 forms. With regard to the bi-weekly bill paying sessions, husband claims that writing checks in the nature of child support and day care payments was the extent of his participation.

In the action before us, husband contends that there was fraudulent misrepresentation on the part of wife in compelling husband to enter into the property settlement agreement. Husband further asserts that wife failed to make a full disclosure of all of her financial resources prior to his entry into the agreement. Husband ultimately claims that wife's fraudulent misrepresentation and her failure to make a full and fair disclosure of her financial resources render the parties' property settlement agreement voidable.

We now undertake to determine whether the agreement is valid. It is well-settled law in Pennsylvania that a husband and wife are free to determine their property rights and support obligations by contract. See 23 Pa.C.S. §3105. Moreover, one of the well-established precepts regarding property settlement agreements and their modification is that a property settlement agreement between a husband and wife will be enforced by

the courts in accordance with the same rules of law applicable to contract interpretation. *Gocek v. Gocek,* 417 Pa. Super. 406, 409, 612 A.2d 1004, 1006 (1992), citing *Kleintop v. Kleintop,* 291 Pa. Super. 491, 495, 436 A.2d 223, 225 (1981). "[T]he paramount goal of contract interpretation is to ascertain and give effect to the parties' intent." *Bianchi v. Bianchi,* 859 A.2d 511, 515 (Pa. Super. 2004), citing *Lang v. Meske,* 850 A.2d 737, 739 (Pa. Super. 2004). "[W]here, as here, the words of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the express language of the agreement itself." *Id.,* citing *Brosovic v. Nationwide Mutual Insurance Co.,* 841 A.2d 1071 (Pa. Super. 2004).

Furthermore, the long-standing law of this Commonwealth is that property settlement agreements are presumed to be valid and binding on the parties. *McGannon v. McGannon,* 241 Pa. Super. 45, 359 A.2d 431 (1976). Generally, parties will be bound by their agreements, absent proof of fraud, misrepresentation or duress. *Sabad v. Fessenden,* 825 A.2d 682, 688 (Pa. Super. 2003). Moreover, they are bound "without regard to whether the terms were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains." *Id.* at 688. Thus a court may construe or interpret a property settlement agreement as it would a contract, but it has neither the power nor the authority to modify or vary the decree unless there is conclusive proof of fraud or mistake. See *Bianchi v. Bianchi,* 859 A.2d 511, 515 (Pa. Super. 2004).

Pennsylvania jurisprudence has long mandated that when a husband and wife draft a property settlement

agreement, "full disclosure of the parties' financial resources is a mandatory requirement." *Stoner v. Stoner,* 572 Pa. 665, 673, 819 A.2d 529, 533 (2003). Thus, in order for a property settlement agreement to be enforceable, the parties must make a full and fair disclosure of their respective financial positions. *Colonna v. Colonna,* 791 A.2d 353, 355 (Pa. Super. 2001), citing *Simeone v. Simeone,* 525 Pa. 392, 402, 581 A.2d 162, 167 (1990). The axiomatic question then becomes: what constitutes full and fair disclosure?

Husband contends that merely providing the identity of an asset is not fair for the intended purpose of executing a property settlement agreement. Rather, husband contends that full and fair disclosure should include not only the revelation of the specific nature of the financial resources, but also their respective valuations. Furthermore, husband proffers that the person who should be held accountable for making the full and fair disclosure of a particular asset should be the person most likely to have such information. Husband claims that because wife's personal financial assets are at issue here, wife should have been responsible for making a full and fair disclosure. Husband therefore argues that the mere allegation that he had general knowledge of the existence of wife's financial assets is immaterial unless and until it is clearly established that wife failed to provide husband with a full and fair accounting of her financial resources. Because wife failed to specifically provide a valuation of her financial holdings, particularly her Roadway Express Inc. 401(k) pension plan, her Mellon Bank CD, and her Dreyfus Investment IRA, husband claims that the parties' property settlement agreement should be rescinded as voidable.

Wife, on the other hand, argues that, based on the evidence produced at trial, it is clear that she made no misrepresentations with respect to the parties' assets. Neither party discussed appraised values for the marital home and neither party asked for a listing of financial accounts. Moreover, wife contends that husband knew of her Dreyfus, Mellon, and Roadway Express accounts. After all, husband was physically present when wife opened her Mellon Bank certificate of deposit account. The couple prepared their tax returns jointly. Husband had full access to all of wife's financial documents. The property settlement agreement specifically references wife's Roadway Express pension. Finally, the couple reviewed wife's Dreyfus and Roadway Express financial statements together during their mail-opening sessions.

The Supreme Court has held that because the parties to a property settlement agreement stand in a relation of mutual confidence and trust, the disclosure of their financial positions in preparation of such an agreement must be full and fair, but need not be exact. *Id.* at 402, 581 A.2d at 167. As such, full and fair disclosure does not require disclosure of the exact amount of a party's assets; rather, it merely requires sufficient disclosure to allow the intended party to make an informed decision. *Busch v. Busch,* 732 A.2d 1274, 1278 n.5 (Pa. Super. 1999), citing *Gula v. Gula,* 380 Pa. Super. 249, 254, 551 A.2d 324, 327 (1988). Absent a full and fair disclosure, a party may assert that there has been a material misrepresentation in the inducement for entering into a property settlement agreement. *Sabad v. Fessenden,* 825 A.2d 682, 688 (Pa. Super. 2003). Moreover, Pennsylvania courts find that a presumption of full disclosure arises when a property settlement agreement specifically pro-

vides that full disclosure of the parties' financial assets has been made. *Porreco v. Porreco,* 571 Pa. 61, 69, 811 A.2d 566, 570 (2002). "If a spouse attempts to rebut this presumption through an assertion of fraud or misrepresentation then this presumption can be rebutted [only] if it is proven by clear and convincing evidence." *Simeone v. Simeone,* 525 Pa. 392, 403, 581 A.2d 162, 167 (1990), citing *Hillegass Estate,* 431 Pa. 144, 152-53, 244 A.2d 672, 676-77 (1968).

Our first consideration in this case is whether wife made a full and fair disclosure of her financial position to husband prior to his signing of the agreement. Here, the property settlement agreement unequivocally states that full financial disclosure was made. The agreement provides:

"The parties hereto agree to the following distribution of their marital property in lieu of any equitable distribution by a court of appropriate jurisdiction, both parties acknowledging the said distribution is fair and equitable and that they are satisfied with same, being fully and completely informed of their rights and being familiar with and cognizant of their wealth, real and/or personal property, estates and assets, earnings and income of the other, and that each has made a full and complete disclosure to the other of his or her entire asses [sic], liabilities and worth." Property settlement agreement at page 3, paragraph 2.

Husband and wife, in signing the agreement, both admitted that they were fully informed of their rights, familiar with the assets of the other, and had fully disclosed the nature and extent of their own assets. Moreover, the language of the agreement further provides:

"Each party . . . acknowledges and declares that he or she respectively is fully and completely informed as to the facts relating to the subject matter of this agreement, and as to the rights and liabilities of the parties, enters into this agreement voluntarily after receiving the advice of independent counsel or having had the opportunity to receive the advice of independent counsel and waiving said right . . . Each party further represents that he or she has given careful, mature thought to the making of this agreement, has carefully read each of the provisions hereof, fully and completely understands each provision, both as to subject matter and legal effect, and based thereon, has executed this agreement." Property settlement agreement, page 12, paragraph 17.

The foregoing language expressly imparts that full disclosure of each party's financial assets had been made. Because a presumption of full disclosure arises when a property settlement agreement specifically provides that full disclosure has been made, the evidentiary burden falls on husband to show that a fraudulent misrepresentation occurred. *Porreco v. Porreco,* 571 Pa. 61, 69, 811 A.2d 566, 570 (2002).

The Supreme Court outlined the requisite elements of a cause of action for fraudulent misrepresentation and delineated a high standard for rescinding property settlement agreements in the case of *Porreco v. Porreco,* 571 Pa. 61, 811 A.2d 566 (2002). In *Porreco,* the court held:

"In order to void a contract due to fraudulent misrepresentation, the party alleging fraud must prove, by clear and convincing evidence: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether

it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury proximately caused by the reliance." *Porreco v. Porreco,* 571 Pa. 61, 69, 811 A.2d 566, 570 (2002).

The standard for clear and convincing evidence has been defined as "testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of truth of the precise facts in issue." *In re Adoption of Dale A. II,* 453 Pa. Super. 106, 110, 683 A.2d 297, 299 (1996).

Husband seeks to rescind the property settlement agreement for the following reasons. He claims there was: (1) Fraudulent misrepresentation of the value of the marital home; (2) fraudulent misrepresentation of wife's Roadway Express 401(k) pension plan; (3) fraudulent misrepresentation of wife's Mellon Bank certificate of deposit; (4) and fraudulent misrepresentation of wife's Dreyfus individual retirement account.

Husband initially alleges that wife fraudulently misrepresented the value of the marital home. The portion of the agreement pertaining to the real property at issue states:

"Husband after full and fair disclosure of the nature and value of the aforesaid property, and cognizant of his right to obtain an independent appraisal regarding the value of the same relinquishes his interest in and to the marital residence in consideration of wife's agreement to be solely responsible for the payment of the parties' debt to East Stroudsburg Savings Association in the form of a first lien mortgage." Property settlement agreement, page 3, paragraph 2(A)(i).

The terms of the agreement are clear. Husband contracted to relinquish his rights to the marital residence located at RR6, Box 6223-A, Stroudsburg, Monroe County, Pennsylvania, which was encumbered by a mortgage to East Stroudsburg Savings Association, provided that wife agreed to be solely responsible for the payment of the parties' debt to the bank in the form of a first lien mortgage. Husband alleges that it was only subsequent to the execution of the property settlement agreement that he discovered that the marital estate actually had an approximate value of $150,000 at the time of the execution of the agreement.

We find that the provision in the agreement clearly satisfied the full and fair disclosure requirement of *Simeone.* Husband's signature on the agreement implies that he read it and agreed to be bound by it. The language specifically stated that the parties were unaware of the actual value of the home and that husband was free to have it appraised. We find that husband did not meet his burden of proving fraudulent misrepresentation by clear and convincing evidence. In fact, we are hard-pressed to find any misrepresentation at all on the part of wife. The agreement contains no representations regarding the value of the marital home. The agreement provides only that wife will take the marital home and assume its accompanying mortgage. We find that husband simply failed to realize that the marital residence was worth more than he originally thought. Because husband could have procured an appraiser to confirm the value of the marital home and could have further investigated any doubts he may have had as to the value of the residence, we will not allow him, now that he has the benefit of

hindsight, to avoid compliance with the agreement. See *Colonna* at 356.

Our concern with this allegation is that husband appears to be taking issue with the underlying inequity of the agreement, but is expressing that concern by way of a fraudulent misrepresentation claim. Per the terms of the agreement, wife received the marital residence valued at $150,000. Meanwhile, husband, by virtue of the agreement, received a distribution of assets valued at a mere $10,000, which is comprised of the transfer of the 1995 Nissan pickup truck, valued at $6,500, plus the $3,500 in cash he received. Wife retained all of the remaining marital assets. Unfortunately for husband, the apparent inequality of the bargain is not a consideration that we may evaluate. After all, parties to a property settlement agreement are bound "without regard to whether the terms were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains." *Sabad v. Fessenden,* 825 A.2d 682, 688 (Pa. Super. 2003). As such, we find that husband has failed to adequately prove fraudulent misrepresentation on the part of wife with regard to the portion of the agreement pertaining to the marital residence. Husband is therefore bound by the agreement.

Husband's next allegation of error is that there was fraudulent misrepresentation of wife's Roadway Express 401(k) pension plan account. We find this allegation to be unconvincing. Paragraph 2(E) of the agreement provides:

"The parties acknowledge that wife has a pension plan through her employment at Roadway Express. By this agreement, husband agrees to waive any rights, claims

or interest, which he might otherwise have in and to the aforesaid plan in consideration for the promises contained in this agreement." Property settlement agreement, page 5, paragraph 2(E).

Despite husband's claim that he was unaware of wife's Roadway Express pension plan, he was unable to explain that lack of knowledge, given that the preceding provision specifically detailed the parties' respective retirement plans. We are not troubled by the fact that nothing was stated particularizing the nature or form of those plans. We find it sufficient that the agreement specifically acknowledged that each of the parties was aware that the other had a pension plan. As such, it is our determination that had husband been concerned with the amount of wife's pension, he should have sought more information prior to signing the agreement.

Husband finally alleges fraudulent misrepresentation on the part of wife regarding her Mellon Bank certificate of deposit as well as her Dreyfus individual retirement account. The agreement contains a provision regarding bank accounts generally, which states, in pertinent part:

"Husband and wife acknowledge that any and all joint checking and/or savings accounts have been divided between the parties prior to the execution of this agreement and both parties hereby waive any right or claim which either may have in and to any monies received by the other party from the division of those accounts as well as any right or claim which either may have in and to any monies presently held in the individual name of the other party." Property settlement agreement, page 5, paragraph 2(G)(i).

Both parties did, in fact, sign the agreement containing the foregoing terms. The fact that wife had two individual accounts that husband claims he was not expressly aware of is not a sufficient reason for us to rescind the agreement. Wife did not hide those accounts from husband. In fact, husband had ready access to all of her files. There is a very real distinction between wife knowingly failing to disclose the exact valuation of her personal accounts and wife fraudulently misrepresenting her financial assets to induce husband to sign a property settlement agreement. Because husband has failed to prove evidence of the latter, the agreement must be enforced.

In *Porreco,* the Supreme Court held that it could not find reliance on a misrepresentation "where the party claiming reliance had an adequate opportunity to verify the allegedly fraudulent statements." 571 Pa. 61, 70, 811 A.2d 566, 571 (2002). In other words, "[t]o be justifiable, reliance upon the representation of another must be reasonable." *Porreco* at 69, 811 A.2d at 571, citing *In re Allegheny International Inc.,* 954 F.2d 167, 178 (3d Cir. 1992). Here, although husband did not have wife's financial records in his physical possession, they were readily available to him and easily accessible by him. However, husband failed to specifically request them. We therefore find that husband's reliance was not justifiable because he had an adequate opportunity to verify wife's financial records and failed to do so.

Although husband avers that the agreement should be rescinded because it was procured by wife through fraudulent misrepresentation and without full disclosure of the parties' assets, the crux of husband's complaint is an unconscionability argument. Husband maintains that

the division of the net equity in the parties' marital estate as established by the property settlement agreement is one-sided and does not represent a reasonable or equitable division of the parties' marital estate. Husband further argues that the agreement is unconscionable because it is unreasonably favorable to wife, who was the drafter.

Whether the agreement was favorable to one party or another at the time of execution in 2003 is not the issue. See *Colonna v. Colonna,* 791 A.2d 353, 357 (Pa. Super. 2001), citing *Todd Heller Inc. v. United Parcel Service Inc.,* 754 A.2d 689, 701 (Pa. Super. 2000). "In order 'for a court to deem a contractual provision unconscionable it must determine both "that the contractual terms are unreasonably favorable to the drafter" and that there [was] no meaningful choice on the part of the other party regarding acceptance of the provisions.' " *Colonna v. Colonna,* 791 A.2d 353, 357 (Pa. Super. 2001), citing *Todd Heller Inc. v. United Parcel Service Inc.,* 754 A.2d 689, 701 (Pa. Super. 2000). This agreement is not unconscionable because husband has failed to show that both parties were not of equal bargaining power. Furthermore, we find that wife made a full and fair disclosure of her financial position at the time the agreement was executed. We further find that husband has failed to present any evidence of fraudulent misrepresentation on the part of wife. As such, we are compelled to uphold the agreement under Pennsylvania law.

The *Porreco* court delineated a high standard to rescind property settlement agreements. In said case, the court upheld and enforced a prenuptial agreement despite the fact that the agreement fraudulently listed the value of a diamond engagement ring as $21,000 instead

of disclosing that the ring was, in fact, a cubic zirconium, and therefore worth markedly less. *Porreco v. Porreco* at 70, 811 A.2d at 570, citing *Bortz v. Noon,* 556 Pa. 489, 499, 729 A.2d 555, 560 (1999). The *Porreco* court emphasized that the wife had the opportunity to obtain her own appraisal of the ring prior to her execution of the agreement. *Id.* at 71, 811 A.2d at 572. Similarly, here, husband clearly had the opportunity to obtain financial statements and a home appraisal. The fact that he chose not to do so until after executing the agreement is not a sufficient reason for us to rescind the agreement.

We note that our decision today does not take into account the reasonableness of the agreement. After all, a property settlement agreement is to be reviewed as any other contract. See *Simeone, supra.* When construing agreements involving clear and unambiguous terms, this court need only examine the writing itself to give effect to the parties' understanding. *Vaccarello v. Vaccarello,* 563 Pa. 93, 757 A.2d 909 (2000). A court may not modify the plain meaning of the words under the guise of interpretation. *Id.*

Here, the parties negotiated the agreement at issue from March of 2003 through November of 2003. Husband determined that wife had particular assets of value sometime after having signed the agreement. We will not rescind the agreement simply because husband, upon determining that he did not get the benefit of the bargain, now wishes not to abide by the terms of the agreement. In light of the clear and unambiguous language of the agreement, coupled with husband's failure to prove fraudulent misrepresentation or a lack of full and fair

disclosure by clear and convincing evidence, we will uphold the parties' agreement.

Finally, we note that the agreement contains a provision providing that this agreement "shall be incorporated for purpose of enforcement only, but not merged into any divorce decree or judgment in divorce." Property settlement agreement, page 11, paragraph 16(A). As such, the agreement will remain a valid and binding contract.

Accordingly, we enter the following:

## ORDER

And now, December 7, 2004, after a trial on plaintiff's complaint to rescind the property settlement agreement and defendant's counterclaim to enforce the property settlement agreement, it is hereby ordered as follows:

(1) Verdict for defendant against plaintiff on plaintiff's complaint to rescind the parties' property settlement agreement.

(2) Verdict for defendant against plaintiff on defendant's counterclaim for enforcement of the parties' property settlement agreement.

(3) Husband is ordered to execute a deed to the marital residence and produce all other documents required by the agreement within 10 days of the date of this order.