**Barry WALKER,**

v.

**MAY DEPARTMENT STORES CO., d/b/a Strawbridges and Strawbridge & Clothier and Robert Bryant, Kimberly Stone, Anthony Battle and Anthony Robinson.**

No. Civ.A. 98–2449.

United States District Court, E.D. Pennsylvania.

Jan. 24, 2000.

Rania M. Major, Philadelphia, PA, for plaintiff.

Andrew Siegletuch, Sweeney & Sheehan, Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This case has been brought before the Court on motion of the defendants for summary judgment. For the reasons which follow, the motion shall be granted in part and denied in part.

### Statement of Facts

On January 3, 1997, the plaintiff, Barry Walker, was observed via closed circuit television in the Strawbridge's department store in Center City Philadelphia by defendant Kim Stone, a store detective. In Ms. Stone's opinion, Mr. Walker, whom she had apprehended less than a week before for shoplifting, was acting suspiciously and she believed he may have again taken store merchandise without paying for it. Using the store security department's radio system, Ms. Stone directed uniformed guard Robert Bryant, who was in the vicinity of Mr. Walker, to follow him and try to "spook him" into dropping the shopping bag that he was carrying.

By the time that Mr. Bryant could locate the plaintiff, he was already out of the Strawbridge's store and in the Gallery mall, walking toward the Food Court area. Mr. Bryant began to follow Mr. Walker, but was soon passed by Anthony Battle, a plainclothes store detective, who caught up to the plaintiff and stopped him outside of the McDonald's Restaurant. According to the plaintiff, Mr. Battle pushed him toward

the wall of the McDonald's, grabbed him by the arm and asked him what he had in the bag. According to Mr. Battle and Mr. Bryant, however, Mr. Battle put his arm around the plaintiff's shoulders and asked him what was in the bag. The plaintiff produced a receipt for three of the items that he was carrying from the nearby Ross store and since Mr. Bryant's search of the remaining contents of the bag revealed no tags or other marks identifying them as Strawbridge's merchandise, the items were returned to the plaintiff and he was released, with apologies from Mr. Bryant.

Mr. Walker followed Messrs. Bryant and Battle back into the Strawbridge's store to complain of the treatment that he had received and to get their names. Neither man would identify themselves but Mr. Battle introduced the plaintiff to Anthony Robinson, one of the security managers on duty, who in turn, listened to his complaint and gave him the phone number and name of his supervisor, Philip Bonafiglia. Mr. Walker contends that he tried to reach Mr. Bonafiglia on several occasions, but was unsuccessful. Plaintiff thereafter filed this lawsuit against Strawbridges and its employees, alleging negligence, "intentional actions," and "discrimination." Discovery in this matter having now been completed, Defendants move for summary judgment in their favor as a matter of law.

### Standards Governing Summary Judgment Motions

The standards for determining whether summary judgment is properly entered in cases pending before the district courts are governed by Fed.R.Civ.P. 56. Subsection (c) of that rule states, in pertinent part,

> ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in charac-

ter, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

In this way, a motion for summary judgment requires the court to look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial. *Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d 1287 (D.C.Cir.1988), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). *See Also: Aries Realty, Inc. v. AGS Columbia Associates,* 751 F.Supp. 444 (S.D.N.Y.1990).

As a general rule, the party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a summary judgment motion, the court must view the facts in the light most favorable to the party opposing the motion and all reasonable inferences from the facts must be drawn in favor of that party as well. *U.S. v. Kensington Hospital,* 760 F.Supp. 1120 (E.D.Pa.1991); *Schillachi v. Flying Dutchman Motorcycle Club,* 751 F.Supp. 1169 (E.D.Pa.1990).

When, however, "a motion for summary judgment is made and supported [by affidavits or otherwise], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate may be entered against [it]." Fed.R.Civ.P. 56(e).

A material fact has been defined as one which might affect the outcome of the suit under relevant substantive law. *Boykin v.*

*Bloomsburg University of Pennsylvania,* 893 F.Supp. 378, 393 (M.D.Pa.1995) citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.,* citing *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

### Discussion

**A. Immunity from civil liability under Pennsylvania's Retail Theft Statute, 18 Pa.C.S. § 3929.**

■■■ Defendants first argue that they are entitled to summary judgment in their favor on all counts of the complaint because they are effectively immune under the Pennsylvania Retail Theft Statute, 18 Pa.C.S. § 3929. Specifically, that statute provides in relevant part:

(c) **Presumptions.**—Any person intentionally concealing unpurchased property of any store or other mercantile establishment, either on the premises or outside the premises of such store, shall be prima face presumed to have so concealed such property with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof within the meaning of subsection (a), and the finding of such unpurchased property concealed, upon the person or among the belongings of such person, shall be prima facie evidence of intentional concealment, and, if such person conceals, or causes to be concealed, such unpurchased property, upon the person or among the belongings of another, such fact shall also be prima facie evidence of intentional concealment on the part of the person so concealing such property.

. . . . . . . . . . . . . . . .

(d) **Detention.**—A peace officer, merchant or merchant's employee or an agent under contract with a merchant, who has probable cause to believe that retail theft has occurred or is occurring on or about a store or other retail mercantile establishment and who has probable cause to believe that a specific person has committed or is committing the retail theft may detain the suspect in a reasonable manner for a reasonable time on or off the premises for all or any of the following purposes: to require the suspect to identify himself, to verify such identification, to determine whether such suspect has in his possession unpurchased merchandise taken from the mercantile establishment and, if so, to recover such merchandise, to inform a peace officer, or to institute criminal proceedings against the suspect. Such detention shall not impose civil or criminal liability upon the peace officer, merchant, employee or agent so detaining.

It should be noted that store employees who stop, detain and search individuals who they reasonably suspect of retail theft do **not** act under color of state authority and hence it is not necessary to first apply for or obtain a search warrant. *Commonwealth v. Lacy,* 324 Pa.Super. 379, 471 A.2d 888, 890 (1984); *Commonwealth v. Martin,* 300 Pa.Super. 497, 446 A.2d 965, 968 (1982). However, since the Retail Theft statute does require that probable cause have existed to justify a stop and to trigger a shopkeeper's immunity, the threshold issue with which we are now faced is whether or not Mr. Bryant and Mr. Battle had the requisite probable cause to stop and detain Mr. Walker.

■■■ Probable cause has been said to be a fluid concept turning on the assessment of probabilities in particular factual contexts not readily or even usefully reduced to a neat set of legal rules. *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). Probable cause is determined by the totality of the circumstances based upon a practical, common-sense decision whether, given all the facts presented, including the veracity and basis of knowledge of any persons supplying hearsay information, there is a fair probability that a crime has been or is being committed by the suspect or that

contraband or evidence of a crime will be found in a particular place. *See: Illinois v. Gates,* 462 U.S. at 238, 103 S.Ct. at 2332; *Sharrar v. Felsing,* 128 F.3d 810, 817–818 (3rd Cir.1997); *Commonwealth v. Banks,* 540 Pa. 453, 454, 658 A.2d 752, 753 (1995). Probable cause thus means more than mere suspicion but does not require the police to have evidence sufficient to prove guilt beyond a reasonable doubt. *Cronin v. West Whiteland Township,* 994 F.Supp. 595 (E.D.Pa.1998). It should further be noted that the appropriate inquiry for application of the "shop-keeper privilege" focuses only on whether the merchant or his agent had probable cause at the moment he decided to detain the plaintiff. *Doe v. Dendrinos,* 1997 WL 89119 (E.D.Pa.1997).

In this case, the totality of the circumstances reflect that the plaintiff was stopped because (1) Kim Stone observed him as a previously known shoplifter in the store one week after he had previously been detained and questioned for shoplifting; (2) Ms. Stone believed he may have been carrying a shopping bag full of Strawbridge's merchandise and she directed store guard Robert Bryant to follow him and try to scare him into dropping the bag; (3) Store Detective Anthony Battle also heard the radio transmission from Stone to Bryant and decided to assist Bryant. When Battle saw the plaintiff turn around and look over his shoulder, he recognized him from his earlier shoplifting incident one week previously and made the decision to stop the plaintiff when he caught up to him outside the McDonald's Restaurant. Given that it appears that the plaintiff may have been stopped solely because he had been caught shoplifting one week before and was carrying a shopping bag, we cannot find that there is no material issue of fact as to whether these circumstances, without more, constituted sufficient probable cause to believe that the plaintiff was again shoplifting on the day at issue so as to trigger the "shopkeeper's immunity" under the Retail Theft statute. Defendant's motion for summary judgment on this basis must therefore be denied.

**B. Entitlement to Summary Judgment on Punitive Damages.**

Defendants next assert that since there is no evidence in this case to support a claim for punitive damages, they are likewise entitled to judgment in their favor as a matter of law on plaintiff's punitive damages claims. We agree.

In order to impose punitive damages, the wrongful conduct must be outrageous and conduct is said to be outrageous when it is "malicious, wanton, reckless, willful or oppressive." *Rizzo v. Haines,* 520 Pa. 484, 506, 555 A.2d 58, 69 (1989); *Trotman v. Mecchella,* 421 Pa.Super. 620, 618 A.2d 982, 985 (1992). Such conduct must show the actor's evil motive or reckless indifference to the rights of others. *Trotman v. Mecchella,* 618 A.2d at 985, citing *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984) and *Hess v. Hess,* 397 Pa.Super. 395, 399, 580 A.2d 357, 359 (1990). In assessing punitives, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant. *Feld v. Merriam,* 485 A.2d at 748. *See Also: Polselli v. Nationwide Mutual Fire Insurance Co.,* 23 F.3d 747, 751 (3rd Cir.1994).

In applying these principles to the case at hand, we first observe that despite having captioned two counts of his complaint as seeking damages for "Intentional Acts," virtually plaintiff's entire complaint alleges nothing more than negligence on the part of the defendants. This, coupled with the complete lack of any evidence that any of the defendants acted other than negligently, let alone recklessly, maliciously, willfully or oppressively or with an evil motive, warrants the entry of judgment in defendants' favor as a matter of law. Summary judgment shall therefore be entered in favor of all of the defendants with respect to plaintiff's claims for punitive damages.

### C. Summary judgment as to Defendant Anthony Robinson.

■ Finally, Defendants assert that summary judgment is properly entered with regard to defendant Robinson, as there is no evidence that he played any role in the plaintiff's stop and detention. Again, we agree.

A careful review of the entire record in this case reflects that Mr. Robinson in no way participated in the stop or the decision to stop and detain Mr. Walker for suspected shoplifting on January 3, 1997. To the contrary, Mr. Robinson's only contact with the plaintiff occurred *after* he followed Messrs. Bryant and Battle back into the store after he had been detained and searched. At that time, Mr. Battle introduced Mr. Robinson to the plaintiff as a supervisor who would hear his complaints about how Mr. Bryant and Mr. Battle had treated him. Mr. Robinson did nothing more than listen to the plaintiff's complaints and give him the name and telephone number of *his* supervisor. We thus find that there is no basis upon which Mr. Robinson could be held liable to Mr. Walker and we therefore shall enter judgment in favor of this defendant as a matter of law as to all of the plaintiff's claims against him.[1]

An order follows.

### ORDER

AND NOW, this 24th day of January, 2000, upon consideration of Defendants' Motions for Summary Judgment and Plaintiff's Response thereto, it is hereby ORDERED that the Motions are GRANTED in PART and DENIED in PART and Judgment is entered in favor of all Defendants on Plaintiff's claims for punitive damages and in favor of Defendant Anthony Robinson on all Counts of the Plaintiff's Complaint.

---

1. Plaintiff argues that Mr. Robinson should be held responsible for Strawbridge's alleged failure to properly train its employees with regard to stopping and detaining individuals for suspected shoplifting. We note, however, that this is not a § 1983 action whereby liability may be imposed upon a policymaking official for the failure to train its police-employees and even if it were there has been no showing of deliberate indifference to the need for more or better training or supervision or that plaintiff's purported injuries resulted from a custom, policy or practice on the part of the defendants. *See, e.g., City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Likewise, there is no evidence that Mr. Robinson is a "policy-maker."